(Decided 7th February, 1879.)

WILLIAM G. HARRISON and ARTHUR GEORGE BROWN, Trustees *vs.* THE ANNAPOLIS AND ELK RIDGE RAILROAD COMPANY. THE ANNAPOLIS AND ELK RIDGE RAILROAD COMPANY *vs.* WILLIAM G. HARRISON and ARTHUR GEORGE BROWN, Trustees.

*What not a Technical Mortgage—Sale of Mortgaged Premises out of the County in which situate—Contruction of Art. 64, sec. 14, of the Code—When a Corporation estopped from disavowing or repudiating its own Acts—Acts of 1872, ch. 425, and of 1876, ch. 337—The State as a Stockholder in the A. and E. R. R. Co.*

A deed was executed by the A. & E. R. R. Co. to W. G. H. and F. W. B., under the authority of the Act of 1872, ch. 425, whereby all its real and personal property and franchises then owned or to be acquired were granted, assigned and transferred to said W. G. H. and F. W. B., in trust to secure the payment of bonds with interest, issued by authority of said Act and by resolution of the directors of said Company; which bonds were held by numerous obligees, whose right to the benefit of the deed passed by endorsement or delivery of the bonds, as negotiable instruments; the forfeiture of the deed depending upon non-payment of the interest for six months; subject to a right in a majority of the bondholders to instruct the trustees to waive the right to consider the principal due; said trustees being otherwise subject to the order in writing of a

Harrison and Brown, Trustees *vs.* Annapolis and Elk Ridge R. R. Co.

majority of said bondholders: with covenants, that until default the company should remain in possession, and manage and operate the R. R. and take and use the income, &c., and that upon default the trustees might enter into and upon the R. R., &c., and operate the same, &c., and after paying expenses, apply the balance to payment of interest on bonds, &c., and that after entry, or before entry after default, the trustees might sell the property in New York or Baltimore. In proceedings to dissolve an injunction prohibiting the said trustees from selling said property in Baltimore, or from entering upon or taking possession of the same. HELD:

That this instrument was not a technical mortgage within the contemplation of Art. 64, sec. 14, relating to mortgages; and that the prohibition against selling mortgaged premises out of the county in which they lie, applies to technical mortgages.

It being alleged by the A. & E. R. R. Co. in its petition for the injunction, that the board of directors, by which the resolution was adopted authorizing the loan and the execution of the deed to secure the same, was not a legally constituted board. HELD:

That the deed and the bonds having been executed with all the legal formalities required by the charter of the company and its amendments, and the bonds negotiated in open market, and their proceeds paid to the company, and appropriations made by it to pay the interest, the company cannot be allowed to disavow and repudiate its own acts, to the injury of *bona fide* bondholders without notice.

Whatever claims a corporation might have for interference by injunction to protect its rights against an abuse or exercise of corporate powers *ultra vires*, the corporation as such, when a party to a cause, is bound by the same rules of equity as an individual. The doctrine of estoppel applies to the one as well as to the other.

There is nothing in the Act of 1876, ch. 337, amending the charter of the Drum Point Railroad Company, and extending the time for its completion, which prevents the State from asserting all its rights as a stockholder in the A. & E. R. R. Co.

CROSS-APPEALS from the Circuit Court for Anne Arundel County, in Equity.

The facts of this case are stated in the opinion of the Court. After the order of the Court below (HAMMOND and HAYDEN, J.,) had been passed, dissolving the injunction in

part and continuing it in part, Arthur George Brown, by order of Court, was made a party complainant in the cause, as trustee in the stead of, and as successor to Frederick W. Brune, trustee, deceased.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, ALVEY and ROBINSON, J.

*Phil. H. Tuck* and *William H. Tuck,* for the Annapolis and Elk Ridge Railroad Company.

The so-called deed of trust was illegally ordered to be executed, and the bonds were illegally directed to be issued, because there was no duly organized board of directors to do so.

By the charter of the A. & E. R. R. Co., sec. 3, its directors are elected and vacancies filled according to the *seventh* section of the charter of the B. & O. R. R. Co., (1836, ch. 123,) which provides that vacancies in the board must be filled " by the president and directors of said company, or a *majority of them,*" and we say that was not done at the meeting of April 25th, 1872, which declared the directors elected.

At this hearing the Court is confined to the petition and the answer, so far as it is responsive to the allegations in the petition. *Hardy vs. Summers,* 10 *G. & J.,* 316.

The answer does not sufficiently deny these averments to entitle the respondents to a dissolution at this time, whatever effect it may have at final hearing as being sufficient to put the company to the proof of these allegations. The denials are not positive, but are founded on hearsay, besides being inferential and augmentative. *Pennington vs. Gittings,* 2 *G. & J.,* 215 ; *Hutchins vs. Hope,* 12 *G. & J.,* 256.

It can only be dissolved by *positive contradictory* averments in the answer, responsive to the allegations in the bill, and *within the personal knowledge of the defendants. Doub vs. Barnes,* 4 *Gill,* 20 ; 1 *Md. Ch. Dec.,* 127 ; *Wood vs.*

*Patterson,* 4 *Md. Ch. Dec.,* 335 ; *Briesch vs. McCauley,* 7 *Gill,* 189 ; *Harris vs. Sangston,* 4 *Md. Ch. Dec.,* 394 ; *Cronise vs. Clark,* 4 *Md. Ch. Dec.,* 403.

Upon motion to dissolve, so much of the bill as is not denied by the answer is taken for true, and *if any one of the material allegations remain unanswered,* the injunction will be continued till final hearing, because in such case the equity on which the writ issued is not sworn away. *Brown vs. Stewart,* 1 *Md. Ch. Dec.,* 87 ; *Drury vs. Roberts,* 2 *Md. Ch. Dec.,* 157 ; *Hamilton vs. Whitridge,* 11 *Md.,* 128 ; *Bouldin vs. Mayor, &c.,* 15 *Md.,* 20 *; Fulton Bank vs. N. Y. & Sharon Co.,* 1 *Paige Chy.,* 311.

The averments in the petition are fortified by extracts from the record of the proceedings of the directors, and the answer does not deny the correctness of these extracts as showing the proceedings to have occurred as stated. *Jones vs. Belt,* 2 *Gill,* 106 ; *Phil. Trust Co. vs. Scott,* 45 *Md.,* 451.

The cases of *Wilson vs. Russell,* 13 *Md.,* 494, and *Bank of Commerce vs. Lanahan,* 45 *Md.,* 407, point out the distinctive features of a mortgage and deed of trust ; from the former of which (13 *Md.,* 494,) it seems impossible to distinguish the instrument now under consideration. *Shillaber vs. Robinson,* 97 *United States,* 68.

The deed being a mortgage, the sale, if any be made, should be in Anne Arundel County, and the provision to sell elsewhere is a nullity. *Code, Art.* 64, *sec.* 14. -

Mortgages, with provisions for speedy sales, are in the interest of the lender, when the borrower cannot help himself, and being in derogation of the common law course of procedure, in equity ought to be strictly construed. *Taylor vs. Bruscup,* 27 *Md.,* 219 ; *Greenwood vs. Greenwood,* 28 *Md.,* 370, 386.

The A. & E. R. R. Co. has a standing in equity to resist the sale and payment of the bonds, and is not estopped by the proceedings of the directors on which reliance is

placed by the trustees. *Collinson vs. Owens*, 6 *G. & J.*, 4. Whatever may be the doctrines announced in other Courts, we are not aware that this Court has decided that such bonds as these are freed from all infirmities attending their original issue, and that the corporation is estopped by the recital on their face from denying their validity. If it be a mere question of power in the company to issue the bonds, it would seem to be conclusively settled by the case of *Steam Nav. Co. vs. Dandridge*, 8 *G. & J.*, 248, 318, where it was held that a corporation might, in a suit at law, deny its liability under contract, because it was made *ultra vires,* even when it had been paid the consideration for the service agreed to be performed. This case has been recently recognized. *Boyce vs. M. E. Church*, 46 *Md.*, 374.

The Act of 1872 authorizes the *company* to issue the bonds, but the objection is that the power has not been so exercised, and the bonds so dealt with, as to bind the corporation. There are cases in which it has been held that when the issue of bonds by municipal corporations was made to depend on something to be done, as a condition precedent, *and the bonds recited that such requirements had been complied with,* a *bona fide* holder was not bound to look beyond the existence of power in the corporation to create the debt. 96 *U. S. S. C.*, 59; *Same*, 314; 21 *Howard,* 544; 2 *Black,* 724; 3 *Wallace*, 667, 331; 94 *U. S.*, 108; 92 *U. S.*, 490.

But it would seem from the opinion of BRADLEY, J., in 92 *U. S.*, 493, that the mere execution and issue of the bonds *without recitals* is not conclusive; it may be *prima facie,* but the contrary may be shown. 16 *Wallace*, 13, is referred to as sustaining his view, in which Judges CHASE, FIELDS and MILLER held that the county giving the bonds was not estopped by the recitals they contained. *Floyd Acceptance Cases,* 7 *Wall.*, 666; *Am. Law Regr.*, October, 1878; 11 *Ohio State*, 191; 13 *Ohio State*, 331; *Comm'rs,*

*&c. vs. Boller*, 94 *U. S.*, 110; *Stavin vs. Genoa*, 23 *N. Y.*, 439.

Directors are but the agents of the stockholders, appointed to act for the whole, who can no more exceed their authority than any other agent. The stockholder commits to the directors no power but that which is given by the charter, and may reasonably trust that the duty of each will be faithfully performed. All persons dealing with directors are presumed to know what powers they possess, because the charter is open to their inspection. *Wyman vs. Hallowell, et al.*, 14 *Mass.*, 58; *Salem Bank vs. Gloucester Bank*, 17 *Mass.*, 1; *Adriance vs. Roome*, 52 *Barb.*, 399; 92 *U. S.*, 646.

Persons taking these bonds could learn from the Act of 1872, that the company had authority to borrow money, &c., but nowhere is power given to lend the bonds or put them on the market for sale, or to use them in assisting other companies to build their roads. 2 *Daniel Nego. Instruments*, 437, *sec.* 1502; 5 *Allen*, 327; 24 *Md.*, 588.

*Charles J. M. Gwinn, Attorney-General*, appearing for the Annapolis and Elk Ridge Railroad Company.

The conveyance, dated June 20th, 1872, made by the Annapolis and Elk Ridge Railroad Company to William G. Harrison and Frederick W. Brune, trustees, if it be assumed to have been executed by due authority, was a mortgage. The conveyance was executed under the provisions of the Act of 1872, ch. 425.

The company had the right to borrow the money which it required for the purposes referred to in the Act, from one person, and to secure the evidences of debt given to such person by executing to him a mortgage of its property and franchises; or it had the right to convey the property and franchises of the corporation in mortgage, to one or more persons in trust, to secure the purchasers and holders of the bonds. *Perry on Trusts, sec.* 749. The

method last referred to, is that which has been usually adopted by railroad companies and other corporations in this State and in others of the United States, to secure holders of their bonds.   Examples of mortgages thus made by corporations to trustees, exist in the cases of *Shaw vs. Bill*, 95 *U. S.*, 12; *Howell vs. Western R. R. Co.*, 94 *U. S.*, 464; *Gilman, et al. vs. Ill. and Miss. Tel. Co.*, setting forth a mortgage of the Des Moines Valley R. R. Co., 91 *U. S.*, 604, 605; *Kenicott vs. Supervisors*, 16 *Wallace*, 457–461; *U. S. vs. New Orleans R. R.*, 12 *Wallace*, 364; *Dunham vs. Cin., Peru and Chicago R. R. Co.*, 1 *Wallace*, 265–269; *Pennock vs. Coe*, 23 *Howard*, 124–132.

It is apparent from the provisions of the deed that it was a conveyance of all the franchises and property of the Annapolis and Elk Ridge Railroad Company, executed in conformity with the provisions of the Act of 1872, ch. 425, sec. 2, as a security for particular debts.   *Fouke vs. Fleming & Douglas*, 13 *Md.*, 406.   Whenever a conveyance is a *security* for the payment of a debt, it must, whatever may be its form, be held to be a mortgage.   *Flagg vs. Mann, et al.*, 2 *Sumn.*, 533; 2 *Story's Equity Jurisp.*, (5th Ed.,) sec. 1018; 2 *Spence's Eq. Jurisd. of Chan.*, *margin p.* 618; *Peugh vs. Davis*, 96 *U. S.*, 336, 337; *Hutchins vs. King*, 1 *Wallace*, 58, 59; *King vs. King*, 3 *P. Wms.*, 360; *Isaacson vs. Harwood*, *L. R.*, 3 *Chanc. Appeals*, 228; *Shillaber vs. Robinson*, 97 *United States*, 68.   Courts of equity will look at the real object and intent of the conveyance.   *Hughes vs. Edwards*, 9 *Wheat.*, 495; *Flagg vs. Mann, et al.*, 2 *Sumner*, 130; *Hutchins vs. King*, 1 *Wallace*, 58, 59.   As the conveyance made by the Annapolis and Elk Ridge Railroad Company was a security for the payment of certain debts payable by that company, a proviso allowing redemption was not necessary; because the right to redeem existed if the conveyance was a security for particular debts, whether the conveyance contained such proviso or not.   *Joynes vs. Statham*, 3 *Ak.*, *margin p.* 389;

*Bell vs. Carter,* 17 *Beav.,* 11; *Dougherty vs. McColgan,* 6 *G. & J.,* 283. But as an equity of redemption is inseparably connected with a mortgage, (*Peugh vs. Davis,* 96 *U. S.,* 336, 337; *Hutchins vs. King,* 1 *Wall.,* 58, 59,) the reservation of such estate to the Annapolis and Elk Ridge Railroad Company, in the conveyance made as a security for the payment of certain debts, certainly established the character of such conveyance as a mortgage. *Longuet vs. Scawen,* 1 *Belt's Vesey, Sr., margin p.* 405, 406; *Conway's Ex'rs vs. Alexander,* 7 *Cranch S. C.,* 237; *Glenn vs. Randall,* 2 *Md. Chanc. Dec.,* 230; *Wilkins vs. Wright,* 6 *McLean,* 341, 342.

If the conveyance in question be not regarded as a mortgage, but as a deed of trust for the benefit of creditors, it is invalid, because of the provision that the company should remain in possession of the property until it made default in the payment of the bonds secured by the conveyance. *Wilson, et al. vs. Russell,* 13 *Md.,* 530; *Price & Little vs. Pitzer,* 44 *Md.,* 528. If the conveyance in question be a deed of trust, and not a mortgage, it is void, because it provides that any surplus remaining in the hands of the trustees, after applying the proceeds of the sale of the property conveyed to them by the deed to the payment of the particular debts secured by said deed, should be paid to the Annapolis and Elk Ridge Railroad Company. *Whedbee & Dickinson vs. Stewart,* 40 *Md.,* 421.

If the conveyance was a mortgage, the clause in the fourth article of said mortgage, authorizing the trustees, in case of default in the payment of the principal of any of said bonds, or in the payment of interest for the period of six months, to sell the property and franchises conveyed to them in the City of New York or in the City of Baltimore, was a void power. The validity of powers of sale vested by the terms of a mortgage in a mortgagee, was at one time much questioned. See opinion of Lord ELDON in

32 v. 50.

*Roberts vs. Bozan,* 3 *Law J. Chancery,* 113 ; 2 *Jones on Mortgages, sec.* 1765.

There could be no question as to the right of the State to recognize, regulate or prohibit this particular form of remedy.

This right was exercised by the Acts of 1825, ch. 203, sec. 5 ; 1833, ch. 181, sec. 2 ; and 1836, ch. 249, sec. 1, codified in part in secs. 5–19 of Art. 64 of the Public General Laws. Sections 5 and 14 of Art. 64 must be construed in such manner, if it be possible to do so, that the two sections may both stand and operate together as effective provisions of law. *Sedgwick on Stat. and Const. Law,* (*2nd Ed.,*) 200; *Canal Co. vs. R. R. Co.,* 4 *G. & J.,* 152 ; *Parkinson vs. State,* 14 *Md.,* 194, 195 ; *Potter's Dwarris on Stat.,* 189.

The authority given by the fifth section of Article 64 to a mortgagor and mortgagee to enter into an agreement to be inserted in the mortgage, under which the mortgagee, or a person named in the mortgage, may make sale of the mortgaged property upon such terms and contingencies as may be expressed in the mortgage, must be so construed as not to impair the positive requirement set forth in the fourteenth section of the same Article, that when the mortgaged property is wholly situated in a particular city or county of this State, the sale of such property under the mortgage affecting it, shall be made in such city or county. Under the fifth and fourteenth sections, therefore, of Article 64, construed together, the agreement to be entered into by the mortgagor and mortgagee, authorizing the mortgagee, or any person named in the mortgage, to sell the mortgaged premises, is valid only when the mortgaged premises, under the terms of such agreement, may be sold by the mortgagee in the county or city in which such mortgaged premises are situated. It is charged in the bill of complaint that the property purporting to be conveyed by the deed, which is the subject of this controversy, was situated wholly in Anne Arundel County, in this

State.    This averment was not denied by the answer, and must, in this proceeding, be taken to be true.    7 *Gill*, 197.

Under the agreement contained in the mortgage, the mortgagee, in case of default, is authorized to make sale of the mortgaged premises in the City of New York, or in the City of Baltimore, but is not authorized to make such sale at any other place than one of the two places thus designated.    The power thus given was in contravention of the positive terms of sec. 14 of Art. 64 of the Code, and cannot be lawfully executed.    It could, as a power, be executed only in the manner provided for by the agreement. 1 *Sugden on Powers, margin p.* 255; *Dolan and Foy vs. Mayor and City Council of Balt.,* 4 *Gill*, 405, 406.    If the power be illegal, it cannot be exercised at all.    No Court can dispense with the method of sale prescribed by the agreement, (1 *Sugden on Powers, margin p.* 255,) or permit its exercise as a power, in a different manner from that stipulated. *Daly vs. James,* 8 *Wheat.,* 535, 536 ; *Waldron vs. Chasteney,* 2 *Blatch.,* 67 ; *Goodtitle vs. Funucan,* 2 *Douglas,* 572 ; 2 *Chance on Powers, sec.* 2989 ; 1 *Story Eq. Jurisp., sec.* 96 ; *Bright vs. Boyd,* 1 *Story's C. C. R.,* 487 ; *Lawrence vs. Farmers' Loan and Trust Co.,* 13 *N. Y.,* 642; *Bigler vs. Waller,* 14 *Wallace,* 304 ; *Shillaber vs. Robinson,* 97 *United States,* 68.    Certainly one of the parties to the agreement cannot vary its terms.    If the law does not permit the execution of the power which has been conferred in the manner prescribed by the instrument, the power must fall to the ground.

The Circuit Court for Anne Arundel County, within whose jurisdiction the trustees named in the mortgage had initiated their proceedings by filing a bond, (*Wilson vs. Watts,* 9 *Md.,* 459 ; *Warehime vs. Carroll County Building Association,* 44 *Md.,* 517,) had the right to enjoin them by its order from proceeding to sell the mortgaged premises in a manner forbidden by the terms of the fourteenth sec-

tion of the sixty-fourth Article of the Code.   2 *Jones on Mortgages, sec.* 1822, *notes* 4 *and* 5; *Mayor and City Council of Baltimore vs. Grand Lodge of Odd Fellows,* 44 *Md.,* 445; *Equitable Mutual Land Improvement Association vs. Becker,* 45 *Md.,* 634.

The Court below was in error in dissolving the injunction, in so far as it restrained the respondents from entering upon, or taking possession of any part, or all of the mortgaged property, under its invalid mortgage.

The bill of complaint charged that the mortgage in question was invalid, because it had been authorized by a board of directors which was not legally constituted.   It averred that at the meeting of the president and directors of the said company, held at Annapolis on April 25th, 1872, a majority of the directors of the said company resigned their offices, and that such resignations were accepted collectively, by a minority of the said directors. It further averred that the said minority of the said directors thereupon elected new directors in the place and stead of the majority, which had thus resigned; and that, afterwards, the board, thus improperly constituted, elected a president; and that the conveyance, dated June 20th, 1872, made to the said William G. Harrison and Frederick W. Brune, as trustees, was executed under the authority and by the direction of this invalid organization.   The averments thus made were supported by an extract from the records of the proceedings of the board of directors of the said company, which it was prayed might be taken as part of the bill of complaint.

While the trustees, by their answer, denied, upon information and belief, that the resignations of the majority of the directors of the Annapolis and Elk Ridge Railroad Company, were collectively made or accepted, they did not deny that the extract from the proceedings of the board, which the petitioner had exhibited as part of its petition, was a true copy of the official minutes.

of said proceedings. They contented themselves with answering that if the minutes were, in form and substance, such as the railroad company had averred them to be, they did not necessarily bear the construction placed upon them by the said company, and did not exclude from the consideration of the Court the circumstances which the trustees alleged to be the true history of the transaction. Now, as the answer of the trustees did not deny that the records of the railroad company sustained the statement made in the petition as to the occurrences at the meeting of April 25th, 1872, (*Covington vs. Ludlow*, 1 *Metc.*, 295 ; *Taylor vs. Henry*, 2 *Pick.*, 297;) and did not deny that the extracts from those records, which were made, by reference, parts of the petition, were true extracts, and made no objection to the admissibility, or form of the proof thus introduced, the averments in the petition in reference to the proceedings of the president and directors of the railroad company, on the day referred to, were supported by "auxiliary proof," the existence of which was not disputed. The proof thus offered was "a stringent corroborative circumstance," (*Poor vs. Carleton*, 3 *Sumn.*, 77, STORY, J.,) referred to in the petition and not denied in the answer. It ought, upon the motion to dissolve the injunction, to have been taken as true. *Briesch vs. McCauley*, 7 *Gill*, 197, citing *Young vs. Grundy*, 7 *Cranch S. C.*, 51. When such auxiliary evidence was shown to exist, the special injunction ought not to have been dissolved. *High on Injunctions*, 529 ; 2 *Joyce on Injunctions*, 1296; *Orr vs. Littlefield*, 1 *Wood & Minot*, 19 ; *Poor vs. Carleton*, 3 *Sumn.*, 77, 78; *Pyecroft vs. Pyecroft*, 2 *Smale & Giff.*, 326. The Court, observing that the case was one which required investigation, ought to have continued the special injunction until the hearing, (*High on Injunctions*, 529 ;) because the law ought rather to interpose a guard against consequences, by previous restraint, than attempt to correct such consequences afterwards. *Universities of Oxford vs. Rich-*

*ardson*, 6 *Sumner's Vesey, Jr.*, 711. It was the duty of the Court to determine, in the exercise of a sound discretion, whether the injunction should be dissolved or not, (*Woodworth, et al. vs. Rogers, et al.*, 3 *Wood & Minot*, 145 ;) and as the existence of a record affecting the legal character of the organization of the board of directors by which the mortgage in question had been authorized, was not denied, the injunction restraining the trustees from acting under that mortgage ought to have been continued until the hearing.

If the mortgage of June 20th, 1872, alleged to have been made by the Annapolis and Elk Ridge Railroad Company to William G. Harrison and Frederick W. Brune, was executed without lawful authority, the said company was not estopped from denying its validity.

It is insisted by the trustees that the bonds of the Annapolis and Elkridge Railroad Company, issued under the Act of 1872, ch. 425, were negotiable securities, which, in the hands of their respective holders, are freed from all infirmities attending their original issue, (*Cromwell vs. County of Sac*, 96 *U. S.*, 59 ; *San Antonio vs. Mehaffy*, 96 *U. S.*, 314;) and that the Annapolis and Elkridge Railroad Company is estopped by the recital on the face of said bonds from denying their validity. *San Antonio vs. Mehaffy*, 96 *U. S.*, 314; *Commissioners of Knox County vs. Aspinwall*, 21 *Howard*, 545 ; *Moran vs. Commissioners of Miami County*, 2 *Black*, 724; *Rogers vs. Burlington*, 3 *Wallace*, 667 ; *Thompson vs. Lee County*, 3 *Wallace*, 331, 332; *Commissioners of Douglas County vs. Bolles*, 94 *U. S.*, 108; *Town of Coloma vs. Eves*, 92 *U. S.*, 490, 491.

This Court may be of the opinion that bonds with coupons attached, payable to bearer, are negotiable securities, which pass by delivery, and have all the qualities and incidents of commercial paper; and that such bonds are protected against the infirmities which may have attended their original issue, because of their character as commer-

cial paper. But mortgages made to secure such bonds enjoy no such immunity or privilege. Such mortgages are neither negotiable securities nor commercial paper. They are deeds, governed by the law pertaining to such instruments. I am not dealing with a case in which the railroad company is resisting a suit upon one or more of the bonds alleged to be secured by the mortgage of June 20th, 1872; but with a case in which the trustees are endeavoring to enforce the mortgage of that date. The causes of action in the two cases are essentially different. It would have been proper for the bondholders and trustees *both* to have pursued their separate remedies, if they had seen fit to do so. *Wilhelm vs. Lee,* 2 *Md. Ch. Dec.,* 323. As the proceedings are different, they admit of separate defences. And if it be true, as insisted by the trustees, that the bonds, being commercial paper, cannot be assailed because of an infirmity in their origin, it does not follow that the immunity which they possess extends to the mortgage executed to secure such bonds.

It would certainly be competent for the railroad company to show, at some stage of the proceedings which are now pending, that the mortgage involved in this controversy was authorized by persons who were not directors, and executed by persons who had no right to execute it, in ignorance of any defect in their respective rights. *Gregory vs. Doidge,* 3 *Bing.,* 474, (13 *E. C. L.,* 59;) *Doe on demise of Plevin vs. Brown,* 7 *Ad. & Ell.,* 447, (34 *E. C. L.,* 141, 142.) If the Court perceives from the petition and exhibits that there is undenied evidence tending to these conclusions, certainly the proceedings on such mortgage ought to be stayed. Such order ought to be made, even if the Court should be of the opinion that the railroad company can be compelled to execute a new mortgage to secure any portion of the bonds covered by the inoperative instrument, which can be shown to have been used by the railroad company for its proper corporate purposes.

*Arthur George Brown* and *A. B. Hagner*, for William G. Harrison and Arthur George Brown, Trustees.

Is the instrument in question in this case a deed of trust, or is it a technical mortgage?

The decision of this Court in the case of the *Bank of Commerce vs. Lanahan,* 45 *Md.,* 396, seems to furnish an answer to this question. The deed in that case, (*q. v.,* pages 398 to 401,) in most respects was like the one in this. Like this deed it contained (page 401) an affidavit to the consideration, but it was held by the Court of Appeals to be a deed of trust, and not a mortgage, for the following among other reasons: It did not conform to the formula given in the Code, Art. 24, sec. 60, (45 *Md.,* 407.) The deed was made for the benefit of creditors, and the grant was to one of them in trust, to secure his own debt and the debts of the other creditors in the manner and upon the terms specified in the deed. The grantee was "the *trustee, and the creditors were cestuis que trust, not mortgagees strictly and technically such.*" Upon default, those creditors could not take possession of the estate and apply the rents, etc.; nor had they any right of foreclosure, such as a mortgagee would have under a technical mortgage. Their only remedy was the enforcement of the trust; and to execute the trust required the property to be sold. (45 *Md.,* 408.) These remarks apply equally well to the deed of trust in question in this case.

In deciding that case the Court remarked, (45 *Md.,* 407,) "as to the question of the character of the deed, upon careful examination of its provisions, we are of the opinion that *it is not a technical mortgage within the contemplation of the fifth section of the sixty-fourth Article of the Code* referred to, but a deed of trust denominated such by the Code, Art. 24, sec. 55. It is a deed of trust to secure debts; and *while it has some of the attributes of a mortgage, yet it presents features which distinguish it from that class of securities, strictly considered.*" (To the same effect see

1 *Jones on Mortgages, sec.* 60, and *Carson vs. Phelps,* 40 *Md.,* 96, 97.) Obviously, therefore, in the view of this Court, only "technical mortgages" which belong to "that class of security strictly considered," fall "within the contemplation" of the sixty-fourth Article of the Code, or are affected by it or governed by its provisions. This construction is strengthened by what the Court said in the next sentence (page 407) about "the legal, formal mortgage, as distinguished from instruments held to be mortgages by construction of Courts of equity."

That this is not a strained construction of the Court's language, nor a perversion of its meaning, is clearly shown by its decision on another section of the sixty-fourth Article of the Code, title, Mortgages. Section 2 of that Article provides that "no mortgage or deed in the nature of a mortgage shall be a lien or charge on any estate or property, for any other or different principal sum or sums of money than the principal sum or sums that shall appear on the face of such mortgage," etc.; and yet, notwithstanding the sweeping and comprehensive language of this section, which, by its express terms, covers not only "mortgages," but "deeds in the nature of a mortgage," this Court held in the same decision, (*Bank of Commerce vs. Lanahan,* 45 *Md.,* 408,) that it did not apply to the deed in that case, simply and solely because that instrument was "not a technical mortgage." (Page 407.) The Court, in the same opinion, concluded its discussion thus, (page 409:) "Being of the opinion that the deed before us is not a mortgage within the meaning of the Code, Art. 64, sec. 5, it follows that the requirements of the 7th and 14th sections of the same Article of the Code have no application to the sale made and reported by the trustee in this case." So too, and for precisely the same reasons, say the trustees, in these cases, concerning the sale which they have proposed to make in the City of Baltimore.

And in the same connection they rely, as did the Court in 45 *Md.,* 407, upon the fact that the instrument in the

record does not fit the form of a technical mortgage as contained in the Code, Art. 24, sec. 60, but is, in form and substance, a deed of trust in accordance with section 55 of the same Article. The same construction was, in another decision, applied to section 29 of Article 24 of the Code, in a strictly analogous case. That section enacts that "*no mortgage shall be valid* except as between the parties thereto, unless there be endorsed thereon an oath or affirmation," etc. Concerning that section, it was decided by this Court in the cases of *Stockett vs. Holliday*, 9 *Md.*, 492, 499, and *Carson vs. Phelps*, 40 *Md.*, 96, 97, *that it applies to "deeds of mortgage technically such*, and not to deeds of trust." In the case last cited the remarks of the Court on page 97, in construing the deed, throw light upon the instrument now in question. *Charles vs. Clagett*, 3 *Md.*, 83, 84, 93; 1 *Jones on Mortgages, sec.* 62; 2 *Jones on Mortgages, sec.* 1769; 13 *Md.*, 178.

The Code and the Courts recognize a distinction between deeds of trust and mortgages. 1874, *ch.* 483, *sec.* 107; 1878, *ch.* 136; 1 *Code, Art.* 24, *sec.* 55; 1 *Code, Art.* 24, *sec.* 60; 1 *Evans' Harris*, 65.

A mortgage is a conveyance by the mortgagor, a debtor, to the mortgagee, his creditor, as a security for the payment of money or performance of a covenant, with remaining equity of redemption in the mortgagor. 1 *Bouvier, sec.* 884; 2 *Bouvier, p.* 280; 2 *Burrill's Law Dic., "Mortgage."*

If, then, the instrument is a deed of trust it requires no argument to show that the sale advertised for July 2nd, 1878, was in strict accordance with the power, and that, therefore, the injunction prohibiting any sale in Baltimore should be dissolved.

The railroad, in its petition, "*denies that the said pretended mortgage*, under and by virtue of which the said William G. Harrison and Frederick W. Brune, claim the right to make the said sale, constitutes any valid lien upon said property and franchises, or confers upon said persons any valid authority to sell the same."

In support of this proposition, it is not alleged that there was any lack of power in the railroad to execute the deed, and it is expressly admitted, (as already shown) that the instrument was authorized and adopted by the acting Board of Directors of the railroad, sealed with its genuine seal, signed by those who had control of its affairs, and claimed and were supposed to be its officers, acknowledged by its attorney, and solemnly attested by its secretary.    It is further admitted that a very large number of the bonds which purported and were supposed to be secured by the deed were sold by the agents of the railroad, and now belong to *bona fide* holders, whose money the corporation received; and it is not denied that Boards of Directors subsequently elected, about whose power and the regularity of whose proceedings no question is made, ratified the deed and all the transactions connected therewith, and provided the money to pay six semi-annual coupons of the bonds secured thereby.   But the simple, naked proposition is, that the Board which authorized the deed was irregularly elected, and therefore that instrument "constitutes no valid lien upon said property and franchises, or confers upon said persons any valid authority to sell the same."

The petition in this case was entirely wanting in the essential elements of frankness and candor, in this: that it made no reference to the most material facts in the whole case, viz., that the petitioner has paid six semi-annual coupons on the bonds in question, and in several successive annual reports recognized them as valid obligations of the corporation; that it never disputed them before this controversy; that it has repeatedly promised to pay the overdue coupons, and asked the trustees for delay; that the present Board admitted, before the property was advertised, that they had no defence to make; and that the present Board is in by virtue or vice of this very tainted stock.   The Court will not allow suitors to play fast and loose in this way; to claim against and under the proceed-

ings complained of. For that reason, if for no other, the injunction should have been dissolved. *Sprigg vs. Western Tel. Co.*, 46 *Md.*, 67, 71, 72, 74–5–6; *Shoemaker vs. Nat. Mec. Bank*, 31 *Md.*, 398, 399, 402; *Johnston vs. Glenn*, 40 *Md.*, 206, 207; *Dalglish vs. Jarvie*, 2 *Mac. & G.*, 231; *Scaggs vs. Balt. and Wash. R. R.*, 10 *Md.*, 280; *P., W. and B. R. R. vs. Howard*, 13 *How.*, 335; *Kerr on Injunc.*, 628.

The doctrine of *ultra vires* has no applicability to this case, for the power to execute the deed was expressly conferred upon the railroad by the Act of 1872, ch. 425; and the question is not as to the existence of the power, but as to the alleged irregularities in its exercise. The obvious distinction here taken is well illustrated by reference to the case of *Pres. and Visitors of Md. Hosp. vs. Foreman*, 29 *Md.*, 524, which was a case in which the principle of *ultra vires* was applied to the contract of a corporation; and to the case of *Shoemaker vs. Nat. Mec. Bk.*, 31 *Md.*, 403, 404. See also *Herman on Estoppel, sec.* 541.

The Act of 1872, ch. 425, sec. 2, only required the bonds to be issued in pursuance of that Act, to be "under its corporate seal," and so, in fact, they were, as well as the deed of trust to secure them, (6 *Otto*, 315,) and for that reason, and in view especially of the subsequent acts of its duly elected Boards of Directors already referred to in recognizing the bonds, the corporation cannot now deny or repudiate either the deed or the bonds. *Howe vs. Keeler*, 27 *Conn.*, 538, 554–5; *Taggart vs. W. M. R. R.*, 24 *Md.*, 596; *Stewart vs. Reddit*, 3 *Md.*, 67; 63 *N. Y.*, 62.

But irrespective of the foregoing considerations, even if the deed of trust and the bonds were originally invalid by reason of the alleged irregularities in the election of the Board which executed them, the trustees, with entire confidence, rely upon the subsequent recognition and ratification of the deed and the bonds by the corporation and its duly elected officers, as shown by the record.

The Courts have applied the salutary doctrine of estoppel to corporations, which, under similar pretexts, have

heretofore sought to evade their obligations, notably in the following decisions, upon which, and upon the principles of right and justice on which those decisions rest, the trustees stand in these cases. *Grape Sugar, &c., Co. vs. Small,* 40 *Md.,* 395, 399, 400; *Lester vs. Howard Bank,* 33 *Md.,* 558, 566–7; *Morrison, &c. vs. Dorsey,* 48 *Md.,* 461; *Tome vs. Parkersburg Co.,* 39 *Md.,* 38, 84; *Warfield vs. Ross,* 38 *Md.,* 88; *Zabriskee vs. C. C. C. R. R. Co.,* 23 *How.,* 382, 398; *Morgan vs. R. R. Co.,* 6 *Otto,* 720; *Moran vs. Miami County,* 2 *Black,* 724, 729, 731. Other authorities to the same effect are the following: *Herman on Estoppel,* secs. 542, 538, *et seq.; Bigelow on Estoppel,* 419; *Mining Co. vs. Rocky Mountain Bk.,* 2 *Col.,* 256; *Corwith vs. Culver,* 69 *Ill.,* 502; *Bradley vs. Ballard,* 55 *Ill.,* 415, 416; *Partridge vs. Badger,* 25 *Barb.,* 146; *Fire Insurance Co. vs. Carrugi,* 41 *Georgia,* 673; *Dooley vs. Cheshire Gloss Co.,* 15 *Gray,* 494; *Sharpley vs. S. E. Rw. Co., Law Rep.,* 2 *Chy. Div.,* 663; 46 *L. J.,* (*N. S.,*) same case, 262; *High on Injunctions,* secs. 771, 777, 780; *Grevenstein's Appeal,* 49 *Pa.,* 310; 101 *Mass.,* 382; 6 *Otto,* 271; 6 *Otto,* 313; 6 *Otto,* 684.

As to the effect of the ratification of this deed by the company, the Court is referred to the following cases: *Howe vs. Keeler,* 27 *Conn.,* 538, 554, 555; *Mills vs. Gleeson,* 11 *Wis.,* 490; *Episcopal Soc. vs. Episcopal Church,* 1 *Pick.,* 372; 46 *L. J. Chan.,* 262; *Sharpley vs. S. E. Rwy.,* 2 *Ch. Div.,* 663; *McKee vs. Vernon Co.,* 3 *Dillon,* 210; *Thayer vs. Montgomery Co.,* 3 *Dillon,* 389; 32 *Maine,* 52; 36 *Maine,* 78; 25 *Barb.,* 146.

The Supreme Court of the United States has been frequently called upon to express its opinion upon this subject in numerous cases where municipal and other corporations, after reaping the benefit of bonds issued under such circumstances, have afterwards endeavored to evade their responsibility, on grounds similar to those taken in this case, and have denounced such attempts in plain terms as often as they have been made.

We refer, among other cases, to the following: *Galveston R. R. vs. Cowdry*, 11 *Wall.*, 474, 476; *Columna vs. Evans*, 2 *Otto*, 487; *Venice vs. Murdoch*, 2 *Otto*, 494; *Moultrie vs. Rockingham Bank*, 2 *Otto*, 631; *Marcy vs. Oswego*, 2 *Otto*, 638; *Humbolt vs. Long*, 2 *Otto*, 642; *Converse vs. Fort Scott R. R.*, 2 *Otto*, 503; *County of Leavenworth vs. Barnes*, 4 *Otto*, 70; *Douglas Co. vs. Bolles*, 4 *Otto*, 104; *Johnson Co. vs. Janney*, 4 *Otto*, 202; *Johnson Co. vs. Thayer*, 4 *Otto*, 631; *Town of Lincoln vs. Davenport*, 4 *Otto*, 801. See also *Nicolay vs. St. Clair Co.*, 3 *Dillon*, 168; *Huidekoper vs. Buchanan Co.*, 3 *Dillon*, 175; *Pollard vs. Pleasant Hill*, 3 *Dillon*, 195; *Aller vs. Cameron*, 3 *Dillon*, 198; 5 *Otto*, 360; 5 *Otto*, 619; 5 *Otto*, 667.

Bowie, J., delivered the opinion of the Court.

The Annapolis and Elk Ridge Railroad Company, on the 20th June, 1872, made and executed a deed, to William G. Harrison and Frederick W. Brune, of the City of Baltimore, reciting substantially as follows:

Whereas, the party of the first part, under an Act of the General Assembly of Maryland, passed on the 21st of March, 1837, has constructed, and is now engaged in operating a railroad from the City of Annapolis to the Annapolis Junction, on the Washington Branch of the Baltimore and Ohio Railroad, in this State, etc., and by an Act amending said charter, authorizing the said company to extend its road to the harbor of the City of Annapolis, etc., approved on the 1st of April, 1872, is authorized and empowered to borrow money for the purposes contemplated by said Acts, and to issue bonds or certificates of indebtedness, under its corporate seal, and for the purpose of securing the same, to execute mortgages or deeds of trust upon all or any of its property, real and personal, together with its franchises; and, whereas, the directors of said company had authorized by resolution, its first mortgage bonds amounting to $400,000, for the purposes aforesaid to be

issued, for the purpose of securing the payment of the principal of said bonds, and the interest thereon accruing after actual issue; in consideration of the premises, the loan of said money, etc., the party of the first part, granted, transferred and conveyed to the party of the second part, all the franchises, and all the real and personal property of every kind and description of said company, upon trust for the purposes therein expressed, and upon the following conditions, covenants and agreements. Some of these conditions and covenants, are those usually contained in mortgages, viz., that the grantors should remain in possession until default made; that they should manage, operate and enjoy the said railroad, and take and use all the rents, income, profits, tolls and issues, and dispose of the same in any manner not inconsistent with the deed.

In case of default in the payment of interest on any of said bonds, for the period of six months, the principal of all the bonds should become immediately due and payable, and it should be lawful for the trustees, etc., to enter into and upon all and singular the railroads, etc., and exercise and enjoy the franchises and interests thereby conveyed, and after payment of expenses, apply the money arising as aforesaid, to the payment of the interest on the bonds outstanding, according to the tenor of the coupons, and in the order in which said coupons shall become due, and after paying all such past due coupons, to apply the same to the satisfaction of the principal of said outstanding bonds, ratably, and without discrimination, etc.

It was further provided by Article fourth of said deed, it should be lawful for said trustees "to sell and dispose of all and singular the railroad and railroads, and all other the premises, and property, franchises and interests thereby conveyed, at public auction, in the City of New York, or in the City of Baltimore, should said trustees so elect, etc." The trustees, professing to act under the power contained in the above cited deed, filed their bond in the

Circuit Court for Anne Arundel County, sitting in equity, for the sum of $500,000, payable to the State on the 17th April, 1878, with a condition thereunder written as prescribed by Article 64, sec. 6, of the Code of Pub. Gen. Laws.

They advertised the property for sale on the second of July, in the City of Baltimore, as required by the deed, when they were enjoined by a *nisi* order of said Court, passed *upon the petition of the Annapolis & Elk Ridge Railroad Company,* the Attorney-General appearing in the case by order of the General Assembly, and the Board of Public Works.

An answer having been filed upon motion to dissolve the interlocutory injunction, the Court below continued the same, so far as it restrained the respondents from selling the property described in the deed in the City of Baltimore, and dissolved it in all other respects, from which decretal order, both the petitioners and respondents appealed. The cross-appeals involve the validity of the deed, as a corporate act, binding the corporation, or the stockholders, and assuming its validity, the legality of the sale proposed to be made in the City of Baltimore by the trustees.

The first question, (including the second, and being vital to all further proceedings in the case,) will properly take precedence in our consideration.

It is alleged by the petitioners, that the board of directors, by which the resolution was adopted authorizing the loan, and the execution of the deed to secure the same, was not a legally constituted board.

It is not necessary to critically examine the facts alleged in the petition, to sustain this conclusion; because, the case being heard on bill and answer, and this allegation being denied, it is for the time being, out of the question.

Some exception has been taken at the hearing of the cause in this Court, to the form of, and the sufficiency of

the denial, but we think the authorities sustain the respondents and the Court below on this point.    *Vide* 45 *Md.*, 453 ; *Drury vs. Conner*, 6 *H. & J.*, 289 ; *Waters vs. Creagh*, 4 *Stew. & P.*, 411 ; *Hughes vs. Garner, Y. & C.*, 127 ; *Knickerbacker vs. Harris*, 1 *Paige*, 209.

The application for the injunction is made by the Annapolis and Elk Ridge Railroad Company by its solicitors, the Attorney-General appearing as one of them, by order of the General Assembly and the Board of Public Works.

The State does not appear as a stockholder, setting up equities independently of the corporation, and we must *"pro hac vice"* consider her as represented by the corporation.

Whatever claims a corporation might have for interference by injunction to protect its rights against an abuse or exercise of corporate powers *ultra vires,* the corporation as such, when a party to a cause, is bound by the same rules of equity as an individual.    The doctrine of estoppel applies to the one as well as to the other.    This Court has enforced this principle in numerous instances.    *State, ex rel. Mayor, &c. of Baltimore vs. Kirkley, et al.*, 29 *Md.*, 85 ; 40 *Md.*, 395 ; 39 *Md.*, 36.

The deed, and the bonds which it was intended to issue and secure, have been executed with all the legal formalities required by the charter and its amendments ;—purporting on their face to be made in pursuance of, and to effect the purposes authorized by the charter as amended ; the bonds have been negotiated in open market, to a certain extent, and their proceeds paid to the corporation ; and for several successive years appropriations have been made by the company, to pay the accruing interest, from the current revenues of the company, or other means.

Unless, therefore, the corporation has been since the year 1872, in the hands of directors and officers who were only *"de facto"* directors and officers, and not *"de jure,"* the acts of the directors and managers of 1872, in author-

33                    v. 50.

izing the loan, executing the deed, and issuing these bonds, have been ratified and confirmed by the continuous recognition of, and provision made for them. The corporation as such, cannot be allowed to disavow and repudiate its own acts, to the injury of *bona fide* holders of these bonds, without notice.

Stockholders are generally concluded by the action of the majority, represented by directors duly elected, acting within their chartered limits; we do not express any opinion upon the rights of the State as a stockholder; she does not appear in that character before us. Nor do we wish to be understood as laying any stress upon the effect of the Act of 1876, ch. 337, entitled "An Act to amend the charter of the Drum Point Railroad Company," etc., "and to extend the time for the completion thereof."

There is nothing in that Act, as we construe it, which prevents the State from asserting all its rights as a stockholder.

The second point involves the right of the trustees, to sell the property conveyed to them, under the power contained in the deed, in Baltimore, or elsewhere, than in the county where the property lies.

It is contended on the part of the petitioners, that the instrument conveying the property and conferring the power of sale, being a mortgage, the trustees could not legally sell out of the county in which the mortgaged premises lie.

In several of the more recent decisions of this Court, in which the construction of different sections of Art. 64, title Mortgage, of the Code of Public General Laws, was involved, it has been held that the mortgages therein referred to were "technical mortgages," and the Court has distinguished other instruments, which in some respects were equitable mortgages, from technical mortgages, to avoid the embarrassments and inconveniences which would re-

sult from applying all the provisions annexed to technical mortgages to other deeds of a cognate character, deeds of trust, etc. *Vide Charles vs. Clagett,* 3 *Md.,* 82; 45 *Md.,* 396.

Although the instrument now before us has many of the features of a technical mortgage, yet it contains others which are peculiarly embraced in the class of executory trusts.

The debts to be secured in this case were prospective, and the amount uncertain, held by numerous obligees, whose right to the benefit of the deed, passed by endorsement or delivery of the bonds as negotiable instruments; the forfeiture of the deed depending upon the non-payment of the interest for six months, *subject to a right in a majority of the holders of said bonds to instruct the trustees to waive the right to consider the principal due, etc.*

After investing the trustees with the power to enter and sell upon certain contingencies, it makes them subject to the order *in writing of a majority of the bondholders,* whether they shall exercise one or both of these powers, and when, and in the meantime they are to hold and use the property for the benefit of all the bondholders after paying current expenses. They are in terms trustees, acting upon the requisition in writing, of a majority of the bondholders in interest.

If this Court was warranted, in the case of *The Bank of Commerce vs. Lanahan,* 45 *Md.,* 396, in deciding that the deed in that case was not a technical mortgage within the contemplation of the 5th section of Art. 64, we must by the same process of reasoning arrive at a similar conclusion in the construction of the 14th section, as regards the deed in this case.

It results from these premises, that the order of the Circuit Court of the 23rd of August, 1878, in so far as it dissolved the injunction restraining the trustees from "entering upon or taking possession of any part or all of

the real estate or personal property under the deed of trust mentioned in the proceedings, until the further order of the Court in the premises" be affirmed, and that the said order of the Court below, of the 23rd of August, 1878, continuing the injunction heretofore issued in this cause, restraining the sale of the property in the City of Baltimore, should be reversed, and said injunction dissolved with costs to the respondents.

> *Order affirmed in part, and*
> *reversed in part,*
> *injunction dissolved, and*
> *cause remanded.*

(Decided 7th February, 1879.)