LEWIS G. STANHOPE and JAMES R. MCLAUGHLIN, trading as STANHOPE & Co., and others *vs.* FRANCIS DODGE, and others, Trustees, and others.

*Charge upon land to secure sums due for Owelty of Partition—*
*Difference between such Charge and a Vendor's lien—The*
*Charge not impaired by a Subsequent deed of Trust of the*
*same land made to secure the same sums—Case of a Deed*
*held to be a deed of Trust and not a Mortgage, and not*
*affected by the provisions of the Code relating to the Exe-*
*cution and Recording of mortgages—Construction of sec. 19*
*of Art. 24 of the Code, relating to the Recording of deeds—*
*Effect of recording deeds after the time prescribed by law, as*
*to the rights of Prior and Subsequent creditors—Case of a*
*Deed held to be a Mortgage—Question whether the Affidavit*
*to the consideration was in due form and made before the*
*proper officer—Effect of not recording the Mortgage within*
*six months from its date—Constructive notice.*

On the 10th of February, 1877, W. D., conveyed certain land to
trustees for the benefit of his creditors. The trustees made sale of
the same, and an account was stated by the auditor distributing
the proceeds amongst certain preferred creditors. The land thus
sold had been conveyed to W. D. by his brothers and sisters, by a

deed dated March 20th, 1854, in which after reciting a partition made by mutual consent between the grantors and W. D. of the real estate devised to them by their father, it was further recited that the land conveyed by said deed had in said partition been allotted to W. D., one of said devisees as his portion of said real estate, but " *charged with the payment* " of certain specified sums to the trustees of his three sisters respectively, for owelty of partition. As a further security for the payment of these several sums, W. D. executed his three several bonds, in favor of the trustees of his said sisters, and on the 12th of July, 1854, conveyed to the same trustees, the same land to secure the payment of the same several sums of money and interest thereon. The interest was paid by W. D. down to July 1st, 1869, but the whole principal and interest from that date remained unpaid, and constituted certain claims allowed in the auditor's account as preferred claims. On exception to these claims, it was HELD:

1st. That by the deed of March 20th, 1854, the several sums of money payable to the trustees of the sisters of W. D. were expressly charged upon the land.

2nd. That the said charge was not in the nature of a vendor's lien resting only upon the interest or share conveyed by the grantors respectively, but by the terms of the deed it was charged upon the whole estate therein described and which was held by W. D. subject to the charge thereby created.

3rd. That the bonds and deed of trust of July 12th, 1854, even if the latter was in all respects valid in law, were mere collateral securities for the same debts, and would not have the effect of impairing the charge created by the deed.

4th. That said claims were properly allowed as preferred liens on the fund.

Certain other claims allowed as preferred claims were upon promissory notes of W. D., dated January 24th, 1863, secured by deed of trust made February 14th, 1863, by W. D. and wife, and recorded August 25th, 1869. There was no evidence that it was withheld from record with any fraudulent intent. On exception to said claims it was HELD:

1st. That the provisions of the Code relating to the execution and recording of mortgages, are to be construed as referring to deeds of mortgage technically such, and do not apply to deeds of trust such as the deed of February 14th, 1863.

Stanhope & Co. *vs.* Dodge, *et al.*

2nd. That under Art. 24, sec. 19, of the Code, said deed not being a mortgage might be recorded at any time.

3rd. That the saving clause in said sec. 19 in favor of creditors, is not to be construed as applicable only to creditors who may have acquired liens upon the land, but embraces all creditors who come within the terms of the saving clause.

4th. That so far as respects the debts, if any, of W. D. created before the 14th day of February, 1863, the date of the deed, or thereafter created with notice of the deed, these must be postponed to the claims thereby secured, and in the same manner the parties whose claims were secured by the deed were entitled to priority over all creditors who became such after the 25th day of August, 1869, when the deed was recorded.

5th. But as respects the creditors, if any, whose debts were contracted after the date of the deed and before it was recorded, without notice thereof, these if they were merely general creditors who had not acquired liens on the land, were entitled to come in *pari passu* with the parties whose claims were secured by the deed, and to participate with them ratably in the distribution, and if they had acquired liens on the land they were entitled to priority over those in whose favor the deed was made.

Certain other claims which were allowed a preference by the auditor, were based upon promissory notes of W. D., dated January 1st, 1863, in favor of the trustees for his sisters, secured by a deed made by W. D. and wife, on the 16th of February, 1863. The deed was a conveyance to the creditors directly for the purpose of securing the debts due and payable to them, and provided for a release and re-conveyance of the property on payment of the debts secured. HELD :

That the deed was strictly and technically a mortgage within the meaning of the Code, subject to the provisions therein contained relating to the execution and acknowledgment and recording of such instruments.

The deed was executed and acknowledged before H. R., a Commissioner of Deeds for the State of Maryland, in the District of Columbia, and was recorded on the 26th of August, 1869. An affidavit was made by the grantees "that the several debts mentioned and secured by them in and by the foregoing and annexed deed are justly and *bona fide* owing to them as set forth in said deed." This affidavit was made at the same time that the acknow-

ledgment was made, and before H. R. who had taken the acknowledgment, as Commissioner of Deeds, but the certificate was signed by him, not as Commissioner of Deeds, but with the letters " J. P " affixed to his name. HELD :

1st. That the affidavit although not in the words prescribed by sec. 29, Art. 24, of the Code, was of equivalent import and effect, and so far as the form of the affidavit was concerned, it was a substantial compliance with the requirement of the Code.

2nd. That H. R's affixing the letters " J. P." to his name, or calling himself a justice of the peace, did not impair the validity of the affidavit, as it appeared on the face of the paper that he was at the same time a Commissioner for the State of Maryland, and therefore a person before whom the affidavit could lawfully be made.

3rd. That said deed being a mortgage, did not come within the provisions of Art. 24, sec. 19, of the Code, and was not entitled to be placed upon record after the expiration of six months from its date without an order or decree of a Court of Chancery for that purpose as prescribed by Art. 16, sec. 23.

4th. That the registration of the paper without such order could not have the effect of constructive notice to subsequent purchasers or creditors, and the paper must be considered as a mortgage unrecorded.

5th. That being in all respects regularly executed and acknowledged with a sufficent affidavit by the mortgagees, it was valid between the parties, and if made *bona fide* and not withheld from the record for a fraudulent purpose, or in other words, if it was an instrument which a Court of Chancery would order to be recorded under sec. 23, it operated to give to the persons whose debts were thereby secured, priority over all creditors of W. D., whose debts were contracted before its date, and also over all subsequent creditors who became such with actual notice of the deed.

APPEAL from the Circuit Court for Washington County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, MILLER, ROBINSON and IRVING, J.

*Edward Stake* and *A. K. Syester*, for the appellants.

*Tryon Hughes Edwards* and *Wm. Shepard Bryan,* for the appellees.

BARTOL, C. J., delivered the opinion of the Court.

William Dodge, of Washington County, on the tenth day of February, 1877, executed a deed conveying all his property to trustees, with power to sell the same, and to apply the balance of the proceeds, after the payment of costs and commissions, to the payment of all the just debts of the grantor, "without any preference or priority, except such as may have already been obtained by law."

Upon the petition of the trustees, the Circuit Court passed a decree by consent, directing them to proceed in the execution of the trust, and to sell the lands described in the deed. A sale thereof having been made and ratified, the cause was referred to the auditor, who stated an account distributing the proceeds of sale amongst certain preferred creditors. To this account, designated in the record as "*Ac. No.* 2," the appellants, creditors of William Dodge, excepted, and have appealed from the *pro forma* order ratifying the accounts.

The fund in Court was derived from the sale of the land conveyed to William Dodge by the deed dated March 20th, 1854, executed by his brothers and sisters, children of Francis Dodge, deceased; in which it was recited that Francis Dodge died seized of several parcels of land, and by his last will devised all his estate to his children in fee simple and in undivided shares; and that they, "by mutual consent and agreement, made a fair and equal partition of the real estate of their deceased father, among themselves, and upon such partition the tracts and parcels of land hereinafter mentioned were set apart and allotted to William Dodge, one of the said devisees, and party hereto of the second part, to be held by him, his heirs and

assigns in severalty, *and* his portion of the said real estate; but in order to produce equality among the said distributors in the division of the said estate, *charged with the payment of the following sums of money to the several persons, hereinafter named,* that is to say, the sum of six thousand dollars to the trustees of Mary B. Marbury, the sum of three thousand dollars to the trustees of Emily Dodge, the sum of five thousand four hundred dollars to the trustees of Adeline Lauman," &c.

Said Mary B., Emily and Adeline are children of Francis Dodge, and parties to the deed.

As a further security for the payment of the several sums of money named in the deed, with interest thereon semi-annually, William Dodge, on the first day of January 1854, executed his three several bonds in favor of Francis, Robert P. and Allen Dodge, as trustees of the said Mary B., Emily and Adeline; and afterwards on the 12th day of July 1854, executed a deed of trust, whereby he conveyed to the same trustees the same lands to secure the payment of the same several sums of money and interest thereon.

The interest was paid by William Dodge down to July 1st 1869; but the whole principal, and interest from the last mentioned date, remain unpaid, and constitute claims Nos. 1, 2 and 3 allowed in the auditor's account as preferred claims. The exceptions to their allowance are,

1st. That the bonds are barred by the Statute of Limitations.

2nd. That the deed of July 12th 1854 is to be construed as a mortgage, and that the same is barred by limitation, being of more than twenty years standing, and further that it is defective for the want of an affidavit to the consideration as required by the Code, *Art.* 24, *sec.* 29.

These several exceptions are not material to be considered, because by the deed of March 20th, 1854, the several sums of money payable to the trustees of Mrs. Marbury,

Emily Dodge and Mrs. Lauman, were expressly charged upon the land. This charge is not in the nature of a vendor's lien resting only upon the interest or share conveyed by the grantors respectively, but by the terms of the deed it is charged upon the whole estate therein described, and which was held by William Dodge subject to the charge thereby created.

In *Johnson vs. Johnson*, 40 *Md.*, 189, the charge created by implication was supported in equity, here it was created by the express words of the deed. There is no ground for asserting that it has been waived or relinquished; no agreement to that effect has been proved. The bonds and deed of trust, even if the latter was in all respects valid in law, upon which we express no opinion, were mere collateral securities for the same debts; and would not have the effect of impairing the charge created by the deed. Taking another security of the same grade does not operate as a waiver or extinguishment of a valid subsisting lien. *Polk vs. Reynolds,* 31 *Md.*, 111; *Brengle vs. Bushey,* 40 *Md.*, 141.

It follows that claims Nos. 1, 2 and 3 were properly allowed as preferred liens on the fund. Claims Nos. 4, 5, 6 and 7 are next to be considered; these were allowed as preferred claims, and paid in full out of the fund. They are upon promissory notes of William Dodge, dated January 24th 1863, secured by deed of trust made February 14th 1863, by William Dodge and wife to Alexander and Allen Dodge, trustees, and recorded August 25th 1869. The land thereby conveyed is the same, from the sale of which the fund distributed in the auditor's account was derived.

The deed was executed in Washington County, District of Columbia, and acknowledged in due form before Henry Reaver, a Commissioner for the State of Maryland. Is the instrument a *mortgage* within the provisions of the Code?

It is very similar in its provisions to the deed which was under consideration in *Charles vs. Clagett,* 3 *Md.,* 82, and which was held not to be a mortgage within the meaning of the Act of 1846 (Code, Art. 24, sec. 29.) That decision, though made by a divided Court has since been followed and approved in *Carson's Adm'r vs. Phelps,* 40 *Md.,* 96; *Snowden vs. Pitcher & Wilson,* 45 *Md.,* 260; *Bank of Commerce vs. Lanahan,* 45 *Md.,* 396, and in *The Annapolis and Elkridge Railroad Co. vs. Harrison and Brown,* 50 *Md.,* 490. The result of those decisions is that the provisions of the Code relating to the execution and recording of mortgages, are to be construed as referring to deeds of mortgage, technically such, and do not apply to deeds of trust such as the deed of February 14th 1863. This being so, the only objection to this instrument is that it was not recorded within six months from its date. There is no evidence that it was withheld from record with any fraudulent intent, and under *Art.* 24, *sec.* 19, of the Code, not being a mortgage, it might be recorded at any time, and when recorded it has "*as* against the grantor, his heirs or executors, and against all purchasers with notice of such deed or conveyance, and against all creditors of such grantor and his heirs, who shall become so after the recording of such deed or conveyance, the same validity and effect as if recorded within the time prescribed."

The saving clause in *sec.* 19, in favor of creditors, is not to be construed as applicable only to creditors who may have acquired liens upon the land, as contended by the appellees; but embraces all creditors who come within the terms of the saving clause.

So far as respects the debts, if any, of William Dodge, created before the 14th day of February 1863, the date of the deed, or thereafter created with notice of the deed, these must be postponed to the claims thereby secured, and in the same manner the parties whose claims are secured by

the deed are entitled to priority over all creditors, who became such, after the 25th day of August, 1869, when the deed was recorded.

But as respects the creditors, if any, whose debts were contracted after the date of the deed, and before it was recorded, without notice thereof, these, if they are merely general creditors, who have not acquired liens on the land, are entitled to come in *pari passu* with the parties, whose claims are secured by the deed, and to participate with them ratably in the distribution, and if they have acquired liens on the land, they are entitled to priority over those in whose favor the deed was made.

This rule of distribution results from the construction of *Art* 24, *sec.* 19, and *Art.* 16, *sec.* 23, of the Code, and from the adjudged cases. *Pannell & Smith vs. Farmers' Bank,* 7 *H. & J.,* 202; *Sixth Ward Building Association vs. Wilson,* 41 *Md.,* 506; *Dyson, et al. vs. Simmons,* 48 *Md.,* 207.

It does not clearly appear from the record, which, if any of the debts due to the appellants, are entitled to participate in the distribution, nor are all of their claims satisfactorily proved. There is in the record an agreement signed by the solicitors whereby it is provided "that any and all of the creditors and sureties of William Dodge, shall have the right to file their claims in the cause, and have such distribution as they may be entitled to under the law, subject to all exceptions."

In the face of this agreement, we have refrained from passing distinctly upon the several claims of the appellants exhibited in the record. It will be competent for them, when the case shall be remanded, to furnish proof of their claims, and also of the time when the debts due them were contracted, and their respective rights may be determined in accordance with the rule hereinbefore stated.

After the payment in full of the claims to which we have referred, the auditor's account distributed the balance

of the fund ratably to claims Nos. 8, 9 *and* 10.    These arise upon three promissory notes of William Dodge, dated January 1, 1863, in favor of Francis, Robert P. and Allen Dodge, trustees of Emily Dodge, M. B. Marbury and A. Lauman, secured by a deed made by William Dodge and wife, on the 16th day of February, 1863, conveying the same lands before mentioned.    This deed was executed and acknowledged before the same Commissioner for the State of Maryland, in the District of Columbia, and was recorded on the 26th day of August, 1869.

This differs from the one dated February 14th, 1863, before considered, in one very material and important particular.    The notes therein mentioned were drawn in favor of the trustees, were payable to them, and the deed was executed for the purpose of securing their payment to the grantees.

It is a conveyance to the creditors directly, for the purpose of securing the debts due and payable to them, and though it does not contain a clause of defeasance in the form of a condition, it provides for a release and re-conveyance of the property on payment of the debts secured, which is of the same force and effect as the usual condition contained in a mortgage.    The power of the mortgagee to sell in case of default, is authorized by the Code, *Art.* 64, *sec.* 5, to be inserted in any deed of mortgage.

In our opinion, the deed is strictly and technically a mortgage within the meaning of the Code, subject to the provisions therein contained, relating to the execution, acknowledgment and recording of such instruments.

It appears to have been duly acknowledged before a competent officer, an affidavit was made by the mortgagees " that the several debts mentioned, and secured to them in and by the aforegoing and annexed deed, are justly and *bona fide* owing to them as set forth in said deed."    This affidavit is not in the words prescribed by *sec.* 29, *Art.* 24 of the Code; but it is of equivalent import and effect, and

so far as the form of the affidavit is concerned, it is a substantial compliance with the requirement of the Code. Was it made before a proper officer? The Code requires it to be made before "any one authorized to take the acknowledgment of a mortgage."

It is objected that it is insufficient, because the certificate is signed *"Henry Reaver, J. P.,"* and a justice of the peace in the District of Columbia, is not authorized to take the acknowledgment of a mortgage of land lying in Maryland. It appears, however, upon the face of the paper, that *Henry Reaver,* was a Commissioner for the State of Maryland, as such he took the acknowledgment. On the same day, *Henry Reaver* certifies that the affidavit was made before him. Affixing the letters "J. P" to his name, or calling himself a justice of the peace, does not impair the validity of the affidavit, as it appears on the face of the paper that he was at the same time a Commissioner for the State of Maryland, and therefore a person before whom the affidavit could lawfully be made.

The only objection to the legal validity of the instrument is, that it was not recorded within the time prescribed; being a mortgage, it does not come within the provisions of *Art.* 24, *sec.* 19, and was not entitled to be placed upon record, after the expiration of six months from its date, without an order or decree of a Court of chancery for that purpose, as prescribed by *Art.* 16, *sec.* 23. The registration of the paper without such order, could not have the effect of constructive notice to subsequent purchasers or creditors; and the paper must be considered as a mortgage unrecorded. But being in all respects regularly executed and acknowledged, with a sufficient affidavit by the mortgagees, it is valid between the parties, and if made *bona fide,* and not withheld from the record for a fraudulent purpose, or in other words, if it is an instrument which a Court of chancery would order to be recorded under *sec.* 23, it operates to give to the

persons whose debts are thereby secured, priority over all creditors of William Dodge, whose debts were contracted before its date, and also over all subsequent creditors, who became such with actual notice of the deed.

To the end that the several creditors of William Dodge may be allowed to exhibit and prove their claims, as provided by the agreement contained in the record, and that distribution of the fund in Court may be made among the persons entitled according to the views herein expressed, without affirming or reversing the order of the .Circuit Court, the cause will be remanded under Art. 5, sec. 28 of the Code.

It may not be improper to add that in determining the questions of priority among creditors presented by the record, we have treated the fund embraced in the auditor's account, as if it were the only fund arising under the general deed of trust of February 10th, 1877, no question of marshaling assets having been raised or argued by the solicitors.

*Cause remanded.*

(Decided 17th July, 1879.)