**CITY OF ABILENE, Appellant,**

v.

**John F. DOWNS et al., Appellees.**

**No. 3691.**

Court of Civil Appeals of Texas.

Eastland.

July 20, 1962.

Rehearing Denied Sept. 7, 1962.

John Davidson, City Atty., Abilene, for appellant.

Brooks & Fergus, Abilene, for appellees.

COLLINGS, Justice.

John F. Downs, Vena Powers et al. and E. F. Shotwell et al., owners of farms adjoining each other and located east of the new sewer farm of the City of Abilene brought suit against the city in October, 1960, for damages to their lands. Plaintiffs alleged that the operation of the city's sewer farm commenced on July 10, 1958, when the city began discharging approximately three million gallons of sewage per day on its farm; that in July, 1959, a second sewage line was connected to the farm which raised the amount of sewage discharged to approximately 5.7 million gallons per day, and in November, 1959, the third and final line was completed and connected and the entire sewage from the City of Abilene was discharged on the sewer farm. Plaintiffs alleged that the operation of the sewer farm caused obnoxious fumes and odors to invade their lands constituting a breeding ground for mosquitoes and flies which infested their farms. Plaintiffs founded their cause of action on Section 17, Article 1 of the Constitution of the State of Texas, Vernon's Ann.St.

Upon motion of plaintiffs the three causes were consolidated for trial. The City of Abilene in defense of plaintiffs' claims pleaded the two year statute of limitation; that there were no permanent damages to plaintiffs' lands; and that plaintiffs had failed to state a cause of action under Article 1, Section 17 of the Constitution. The city also filed a motion for change of venue alleging that it could not obtain a fair trial in Shackelford County.

The motion of the City of Abilene for a change of venue was supported by affidavits and no controverting affidavits were filed by plaintiffs. The motion was, however, overruled by the trial court. The motion of the city for a directed verdict at the conclusion of the evidence was also overruled. In answer to special issues the jury found (1) that the operation of the city's sewer farm had caused odors, fumes and insects to invade plaintiffs' lands; (2) that such invasion had resulted in per-

manent depreciation of the market value of plaintiffs' lands; (3) that a depreciation of the market value of the plaintiffs' respective lands had occurred in specified sums of money; and (4) that plaintiffs did not have knowledge that their land was damaged until July, 1959. Judgment was rendered on the jury's verdict and the city has appealed.

It is urged by appellant that the court erred in overruling its motion for a change of venue; that there was a mandatory duty to grant a change of venue in the absence of controverting affidavits required by Rule 258, Vernon's Tex.Rules Civ.Proc. Rule 258 provides as follows:

"Where such application for a change of venue is duly made, it shall be granted, unless the credibility of those making such application, or their means of knowledge or the truth of the facts set out in the said application are attacked by the affidavit of a credible person; when thus attacked, the issue thus formed shall be tried by the judge, and the application either granted or refused."

In connection with overruling appellant's motion for a change of venue it was found by the court that the motion was not timely filed. Although the motion was presented promptly after the parties had announced ready for trial, it was found by the court that the cases involved had been consolidated and had originally been set for trial in December, 1960, but upon motion by appellant the causes were continued and set for trial on March 20, 1961; that the cases were then continued by agreement and reset for March 27, 1961; that the cases were then at the request of appellant reset for April 17, 1961, and that a jury panel was ordered for that date, and was at such time present and available and no other case had been set for trial on that date; and at no time prior thereto did appellant apprise the court of its desire to file a motion for change of venue. It was under these circumstances and based upon these findings that the court found that the mo-

tion for change of venue was not timely filed, and was filed at such a time as to cause delay and disruption of the court's docket, and for that reason should be overruled.

■ There is no question but that the general rule is that an uncontradicted application for change of venue should be granted. However, in Ellis v. Stearns, Tex.Civ.App., 27 S.W. 222, it is stated as follows:

"We understand that parties litigant must assert their rights before the trial court, as a rule, at such a stage of the proceedings as will not * * * delay the business of the court. It is the right of the trial court to so govern its proceedings as to secure orderly dispatch of its business."

■ In the case of Peck & Hickernell v. Bowers Oil Company, Tex.Civ.App., 246 S.W. 751, it was indicated that a change of venue should be made at the earliest opportunity and held that the denial of a motion for change of venue because it was filed too late was not an abuse of discretion. In this case also it was recognized that generally an uncontradicted application for change of venue should be granted. See also Waid v. City of Ft. Worth, Tex.Civ.App., 258 S.W. 1114. We cannot agree with appellant's contention that the holdings in these cases require a change of venue under the facts of the instant case as hereinabove substantially set out. In our opinion the court did not abuse its discretion in overruling the motion.

It is contended in appellant's 1st point that the court erred in overruling its motion for an instructed verdict because the evidence shows as a matter of law that appellees' causes of action, if any, were barred by the two year statute of limitation. Article 5526, Vernon's Ann.Tex.Civ. St. provides as follows:

"There shall be commenced and prosecuted within two years after the cause of action shall have accrued and not afterward, all actions or suits * * *

of trespass for injury done to the estate or the property of another."

Appellee Downs' petition was filed on June 17, 1960, and the Powers and Shotwell petitions were filed October 20, 1960. Citations were served on the city in each of these cases on October 25, 1960. The first question to be determined in this connection is: When did appellees' causes of action accrue?

Construction of the city's sewage disposal plant, consisting of concrete sedimentation tanks, holding tanks, two large digestor tanks and a central gas burner was completed in 1958. The first sewer line to the new plant was tied in on June 18, 1958, and the plant commenced operation for the disposal of sewage on July 10, 1958. The report of an engineering firm and other evidence indicated that the farm could properly handle only about 3,000,000 gallons per day. At the time the operation began, slightly over 3,000,000 gallons of sewage per day flowed to the farm, but in July, 1959, the flow was increased to 5,690,000 gallons per day. The evidence shows that after the plant was put into service there were two substantial and material alterations in its operation and use. The first of these was in July, 1959, when the second sewage line was connected to the farm, and in November, 1959, when the remainder of the city's sewage was directed to the plant. The jury found that appellees Downs, Shotwell and Powers acquired knowledge that their land was damaged as a result of obnoxious odors coming from appellant's sewage disposal plant in July of 1959. Appellant contends that the evidence shows conclusively that the invasion of appellees' lands from odors and insects commenced in July, 1958; that the evidence shows conclusively that appellees not only anticipated such invasion but had full knowledge of it in July of 1958; that limitation therefore ran against the claims of Shotwell and Powers because their suits were not brought until October of 1960, and that limitation ran against the claim of Downs because al-

though his suit was filed in less than two years prior to July of 1958, citation was not served upon appellant city until October, 1960.

The effect of the testimony of each of the appellees was that the odor and other annoying conditions resulting from the operation of the plant were not of such a nature as to constitute an inconvenience or hindrance to them and their homes until a time well within the two year period prior to the filing of these suits. Mrs. Downs testified that the first invasion of their property by odors and mosquitoes occurred in the latter part of September, 1959; that flies which, in her opinion, came from the sewage farm appeared on their premises in July, 1960, grey mosquitoes appeared in September or October, 1960, and sand flies in February, 1961. Mr. Downs stated that although there was some odor in 1958, it was not annoying until September, 1959. Mr. Shotwell testified that the odors were not bad until late in 1959 and that mosquitoes also appeared about that time. Mr. Powers testified that odors became bad enough to complain about in November, 1959, and that he did complain at that time; that the odors and insects became really bad in the summer of 1960 and the insects could be controlled until that time. There was testimony from witnesses called by appellant city to the effect that complaints were received from land owners in the area that sewer odors were emanating from the sewer farm during the summer of 1958, but the testimony of appellees is not in accord therewith. The evidence does show that some of appellees had previously objected to the location of the plant because they feared that there would be odors, but there is no conclusive evidence that they actually complained of such odors or that the odors became bad enough to complain about until late 1959.

■ A city is liable under the Constitution for reduction in the value of land resulting from the construction and operation of a sewage disposal plant and this is true regardless of the question of negligence. City of Abilene v. Bailey, Tex.Civ.App., 345 S.W.2d 540, (Ref. N.R.E.); Brewster v. City of Forney, 223 S.W. 175, Tex.Com. App.; City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.2d 57; Section 17, Article 1, V.A.T.C. In determining when a cause of action accrues in such a case the holdings and the principles announced in the following cases are thought to be controlling.

The case of Houston Water Works Company v. Kennedy, 70 Tex. 233, 8 S.W. 36, was a suit in which Kennedy sought to recover damages because of the act of an employee of the water company in cutting a portion of an arch to make way for a water pipe and thereby removing the support from the east corner of Kennedy's building, causing it to settle, crack and break. The Supreme Court in passing upon the matter stated:

"The arch and house alleged to have been injured were the property of the appellee at the time the arch was cut. This was an act wrongful towards the owner of the property, for which an action might have been maintained as soon as the tort was committed. When an act is in itself lawful as to the person who bases an action on injuries subsequently accruing from, and consequent upon, the act, it is held that the cause of action does not accrue until the injury is sustained."

The Houston Water Works Company case was cited and approved by our Supreme Court in 1954 in the case of Tennessee Gas Transmission Company v. Fromme, 153 Tex. 352, 269 S.W.2d 336. In 1957 in the case of Lance v. City of Mission et al., Tex.Civ.App., 308 S.W.2d 546 (Writ Ref. N.R.E.), it was stated as follows:

"It is settled that where a public permanent improvement is such that it causes injury to property, a single cause of action for permanent damages arises at the time it first becomes apparent that such damage will result,

and is barred by the statute of limitations two years thereafter. Vernon's Ann.Civ.St. art. 5526. City of Texarkana v. Rhyne, Tex.Com.App., 86 S.W. 2d 215; Vann v. Bowie Sewerage Co., 127 Tex. 97, 90 S.W.2d 561; Wichita County Improvement District No. 1 v. Pearce, Tex.Civ.App., 59 S.W.2d 183; Schubert v. Guadalupe County, Tex. Civ.App., 189 S.W.2d 514; City of Dallas v. Winans, Tex.Civ.App., 262 S.W. 2d 256."

In Beck v. American Rio Grande Land & Irrigation Company, Tex.Civ.App., 39 S.W. 2d 640, (Writ Ref.), it was held that limitation on recovery of damages to land resulting from water seepage runs from the time injury becomes apparent or discoverable by due diligence.

In the case of Kolberg v. Hidalgo County Water Improvement District No. 2, 110 S. W.2d 961, Judge Murray of the San Antonio Court of Civil Appeals states the rule in such cases as follows:

"When appellants' land was first visibly affected and injured by seepage from appellee's canals and barrow pits, they had a cause of action against the water district, not only for the damage then inflicted, but for all future damage which might be sustained by reason of the continuation of the seepage, and therefore a suit brought more than two years after the land was visibly affected by the seepage is barred in this state by the two-year statute of limitation."

In Gulf Oil Corporation v. Alexander, Tex.Civ.App., 291 S.W.2d 792, (Ref. N.R. E.), it was held that though salt water from an oil and gas lessee's salt water disposal pit invaded water bearing formations underlying part of an adjoining landowner's land more than two years prior to the owner's institution of a suit for damages caused by the pollution, that where the landowner first discovered invasion of the subsurface fresh water strata by salt water within two years of the time of bringing suit the ac

tion was not barred by the two year statute of limitation.

In United States v. Dickinson, 331 U.S. 745, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789, the Supreme Court of the United States in discussing the question of limitation in a case in which the government did not condemn lands needed in a public works project but "left the taking to physical events, thereby putting on the owner the onus of determining the decisive moment in the process of acquisition by the United States when the fact of taking could no longer be in controversy", the court used the following language:

"The source of the entire claim—the overflow due to rises in the level of the river—is not a single event; it is continuous. And as there is nothing in reason, so there is nothing in legal doctrine, to preclude the law from meeting such a process by postponing suit until the situation becomes stabilized. An owner of land flooded by the Government would not unnaturally postpone bringing a suit against the Government for the flooding until the consequences of inundation have so manifested themselves that a final account may be struck."

The above quotation from the Dickinson case was cited with approval by our Supreme Court of Texas in the recent case of Brazos River Authority v. City of Graham, Tex., 354 S.W.2d 99. In this connection see also: Houston Natural Gas Corporation v. Pearce, Tex.Civ.App., 311 S.W.2d 899; Wichita County Water Improvement District No. 1 v. Pearce, Tex.Civ.App., 59 S.W. 2d 183; Herndon v. G. C. McBride, Inc., Tex.Civ.App., 342 S.W.2d 10; Jefferson County Drainage District No. 6 v. Langham, Tex.Civ.App., 81 S.W.2d 747; City of Stillwater v. Robertson, 192 Okl. 395, 136 P.2d 923.

The causes of action asserted by appellees herein are not based upon any wrongful action on the part of the City of Abilene. Appellees seek damages on account of injuries

"subsequently accruing from and consequent upon" action by the city which was lawful. According to the above cited cases a cause of action does not accrue in such a situation "until the injury is sustained", or until "it first becomes apparent that such damage will result", or when the "land was first visibly affected and injured", or when the "landowner first discovered the invasion of" his subsurface fresh water by salt water, or when the "injury becomes apparent or discernable by due diligence". A careful reading of these cases does not show a conflict in their holdings but simply that the rule is stated in slightly different form in each case as it is applicable to the various fact situations presented. The trial court did not err in the submission of special issues 7, 8 and 9 which inquired when appellees had knowledge that their land was damaged. Appellant's point number 3 complaining of the submission of these issues is overruled.

■■ The jury found, in effect, that appellees Downs, Shotwell and Powers acquired knowledge that their land was damaged as a result of obnoxious odors coming from appellant's sewage disposal plant in July of 1959. The evidence, as above substantially set out, in our opinion supports the finding. Contrary to appellant's contention such evidence does not conclusively show that the invasion of appellees' lands from odors and insects commenced in July of 1958, and certainly does not conclusively show that such invasion commenced with their knowledge at that time. Judicial notice is taken of the fact that odors, insects or mosquitoes to a greater or lesser extent might be expected to exist around most farms because of the presence of tanks, livestock and barnyards. Even though there might have been slight presence of odors, insects and mosquitoes as a result of the first operation of the plant when only about three million gallons of sewage per day flowed to the farm the evidence does not show that the condition was such as to be readily discernible to appellees. Until the condition did become readily discernible or apparent there was actually no injury to appellees' lands. Appellant's first point is overruled.

■ Appellant's fourth point complains of the manner of the submission of the issues on damages. Special issue number 4 inquired concerning the reasonable cash market value of each of appellees' farms immediately prior to the beginning of "such depreciation in value, if any" and special issue number 5 inquired concerning the reasonable cash market value of each of appellees' farms immediately after the completion of the depreciation in value, if any. Appellant urges that there was no fixing of a specified time of injury nor a specified standard which would permit an intelligent answer to such issues; that such issues as submitted permitted the jury to fix the amount of depreciation at any time after the injury occurred and could have the effect to permit an award of damages approximating the full value of the lands. Appellant further contends that the evidence was insufficient to support the submission of any of the issues on damages. This point is overruled. There was ample evidence to support the submission of the damage issues. Appellees were entitled to the submission of damage issues which would give them the benefit of all permanent damages resulting and subsequently accruing from the obnoxious odors, flies, gnats and mosquitoes emanating from appellant's sewage disposal plant. In June of 1958 about one-third of the city's sewage was directed to the plant and according to appellees' testimony no damage was then discernible. It was more than a year later that the other approximately two-thirds of the city's sewage began to flow to the city's sewage farm and the evidence then indicated great damage. Appellees were entitled to recover for these damages. The issues in our opinion fairly submit the question of damages. No specific date is mentioned but the inquiry concerning the value of the land immediately prior to "such depreciation in value, if any" and the market value of the land immediately after the

completion of such depreciation adequately identifies appellees' damages in connection with obnoxious odors, flies and mosquitoes and appellees were entitled to recover therefor. Neither the pleadings nor the evidence indicate any other depreciation in the value of the land which was not attributable to the conditions resulting from the operation of appellant's sewer farm.

■ It is contended in appellant's 5th point that the court erred in failing to submit an issue inquiring whether the acts of the city were such as to constitute a continuing and permanent nuisance. It is held that a city is liable under the constitution for diminution in market value of land due to noxious odors and insects being cast thereon as a result of the construction and operation by the city of a sewage disposal plant regardless of the question of negligence or of nuisance. In the instant case it was found by the jury that the operation of appellant's sewage disposal plant had caused noxious fumes, odors and insects to come upon appellees' land. It has also been held that such a finding amounts to a finding that the operation of a sewage disposal plant creates a nuisance. City of Abilene v. Bailey, Tex.Civ.App., 345 S.W.2d 540. Appellant's 5th point is overruled.

■ We also overrule appellant's 6th point in which it is contended that the court erred in submitting special issue number 3 which inquired whether the damages to appellees' farms were temporary or permanent. Appellant urges that the uncontroverted evidence shows that the damages, if any, to appellees' farms are temporary and not permanent, and that the evidence is insufficient to show that such damages are permanent. Each of the appellees testified concerning the damages to their land which they described as beginning in approximately September of 1959 and continuing until the date of the trial. Each testified that odors continually came from the farm after September of 1959 and that there was no diminishing in the insect population which came from the farm. They testified that the

situation is continuous and that it is permanent. This and other like evidence was sufficient to present a fact issue on the question of permanent damages. A witness for the city did testify that the situation could be improved by adding more lagoons and holding ponds but he admitted that there would always be odors in connection with a sewer farm. Reports of engineering firms also indicated that the storage problem could be alleviated by the use of secondary treatment facilities, but the cost of putting in such a secondary plant was estimated to be between $714,553.00 and $939,152.00. It was not intimated that there was a complete remedy to the odor or insect problem. Although the witness for the city stated that they expected to make efforts to remedy the situation, there was no indication by the city that these expenses would be incurred or that the city expected to discontinue the operation of the plant. Appellant's 6th point is overruled.

■ In appellant's 7th point it is contended that the court erred in rendering judgment for appellees on the verdict because the verdict is excessive. Appellant contends that a remittitur should be required. The jury found depreciation in the value of appellee Downs' land in the amount of $38,700.00, of appellee Shotwell's land in the amount of $13,540.00 and of appellee Powers' land in the sum of $16,300.00. It is urged by appellant that there was no evidence of any physical damage to appellees' lands and no evidence of any damage to the improvements on such lands. Appellant contends that the only damage even attempted to be shown by appellees was damage because of personal inconvenience on account of odors and insects and of like discomfort to cattle kept upon appellees' lands. This point is not well taken. The measure of damages in such cases is the depreciation in market value. There can be no question that excessive insects and odors can interfere with the use of property and result in a depreciated market value. The evidence of such damage supports the verdict.

■ Appellant's 8th and 11th points are concerned with the question of whether or not the operation of appellant's sewer farm was the cause of insects coming upon appellees' lands. Appellant contends that the court erred in admitting evidence of dead insects, flies and mosquitoes because it was not shown that such insects came from appellant's sewer farm. The contention is not well taken. Mrs. Downs testified that they first had insects from the farm in September of 1959 after the large increase of sewage to the city's farm; that the only insects before had been heel flies, horn flies and grasshoppers. Mrs. Downs further stated that she had seen the insects blowing from the direction of the farm and stated that the insects had increased 1000% or more during this period. There was other evidence to the same effect tending to show that such insects did come from appellant's sewer farm to appellees' lands.

Appellant's 11th point urges that the court erred in submitting special issues numbers 2(a), (b), and (c) for the reason that there was insufficient evidence upon which to submit said issues because there was no evidence that the increase in the incidence of insects on appellees' lands was a result of the operation of appellant's sewer farm. The issues in question were concerned with alleged depreciation in the market value of appellees' lands. For the reasons stated above this point is not well taken. There was ample evidence tending to show that the insects and odors in question came from the sewer farm and resulted in depreciation to appellees' lands.

■ Mrs. Albert Hendrix was called as a witness by the City of Abilene and asked by appellant's attorney if she could remember when the city's sewage farm operation commenced. Mrs. Hendrix stated that she could not remember the date and also stated uncertainty as to when the odors and insects were first noticed by her and became obnoxious. In appellant's 9th point it is contended that the court erred in refusing to permit its attorney to refresh the memory of Mrs. Hendrix with prior testimony in an earlier case as to the time and intensity of odors emanating from appellant's sewer farm. Appellant contends that such action of the court materially prejudiced its defense based upon the statute of limitations and constitutes error. We cannot agree with this contention. Certainly no reversible error is shown. Mrs. Hendrix's testimony in the earlier case was introduced in its entirety by appellant. Such testimony is not radically inconsistent with her testimony in the instant case. Actually such prior statement was not admissible as substantive evidence of the truth of the fact stated therein. Although a party may impeach its own witness by prior conflicting statements where the witness proves adverse and the party is surprised, such a situation does not here exist. Mrs. Hendrix testified to no fact adverse to appellant by reason of which appellant could claim surprise and injury. Mrs. Hendrix simply couldn't remember. Under these circumstances no reversible error is shown.

■ Special issue number 1(a), (b) and (c) inquired of the jury whether or not they found "from a preponderance of the evidence that the sewage disposal operation in question has caused objectionable matter, if any, such as noxious fumes, odors or insects, if any, to come upon" the lands of appellees. In appellant's 10th point it is contended that the court erred in submitting such issues to the jury for the reason that same "constituted a comment on the weight of the evidence and the assumption of a controverted fact issue in that it assumed that there was no greater controversy as to insects emanating from the sewer farm than odors, which was uncontroverted." Appellant also urged that the evidence was insufficient to support the submission of an issue inquiring whether insects had invaded appellees' lands from the operating of appellant's sewer farm. We overrule the point. As previously indicated there was ample evidence presenting fact questions to support the submission of such special issues. The contention that

the manner of submission was a comment on the weight of the evidence is likewise not well taken. We are unable to see any material assumed fact issues. It is noted that the complaint here made concerning special issue number 1(a), (b) and (c) was not made in appellant's exceptions to the court's charge. Actually the matter was waived.

We overrule appellant's contention that the court erred in failing to sustain its motion for directed verdict on the ground that any damages suffered by appellees were suffered in common with the community and that such damages were not recoverable. This contention has been decided adversely to appellant by this court and our Supreme Court in City of Abilene v. Bailey, supra, and in Powell v. Houston T. C. R. Co., 104 Tex. 219, 135 S.W. 1153, 46 L.R.A.,N.S., 615.

The judgment is affirmed.