**CITY OF ABILENE, Petitioner,**

v.

**John F. DOWNS et al., Respondents.**

**No. A–9258.**

Supreme Court of Texas.

April 17, 1963.

Rehearing Denied May 15, 1963.

154

John W. Davidson and Les Cochran, Abilene, for petitioner.

Brooks & Fergus, Abilene, Geo. D. Jones, Abilene, with above firm, for respondents.

STEAKLEY, Justice.

A recovery for Respondents against the City of Abilene, Petitioner, for damages to their farms resulting from the operation of Petitioner's newly constructed sewage disposal plant was affirmed by the Court of Civil Appeals. Tex.Civ.App., 359 S.W.2d 642. We granted the application of Petitioner for writ of error to review the decision of the Court of Civil Appeals with respect to Petitioner's application for change of venue and Petitioner's pleas of limitation.

## APPLICATION FOR CHANGE OF VENUE

Respondents, John F. Downs, Vena Powers et al., and F. D. Shotwell et al., filed separate suits against Petitioner in June and in October, 1960. The suits were for damages to their farms resulting from Petitioner's sewage disposal plant which commenced operations on July 10, 1958. The cases were originally set for trial in December, 1960, but were continued on motion of Petitioner and reset for trial on March 20, 1961. Prior thereto, on February 6, 1961, the causes were consolidated upon motion of Respondents. Trial of the consolidated cases was continued by agreement and reset for March 27, 1961. Again, at the request of Petitioner, the consolidated cases were reset for trial on April 17, 1961, on which date a jury panel was ordered, with no other case set for trial. Respondents filed their first amended original petition on April 6, 1961. On April 17, 1961, at 8:50 a. m., Petitioner filed an application for change of venue. Petitioner and Respondents announced ready for trial, after which Petitioner urged its application for change of venue. Respondents did not file an affidavit controverting the application for change of venue as required by Rule 258, Texas Rules of Civil Procedure. The court directed the parties to proceed with the examination of the jury panel and thereafter overruled the application. On May 9, 1961, subsequent to the trial of the cases, Respondents requested findings and conclusions with respect to the order of the court overruling the application for change of venue, in response to which the court filed findings and conclusions amending its original order overruling the application and making the findings and conclusions a part of the order. Among other things, the court found that the motion was not timely filed; that it was filed at such a time as to cause delay and disruption of the court's docket; that the special setting on April 17, 1961, was at the request of Petitioner; and that at no time did Petitioner apprise the court of its intention to seek a change of venue.

Rule 258, T.R.C.P., provides as follows:

"Where such application for a change of venue is duly made, it shall be granted, unless the credibility of those making such application, or their means of knowledge or the truth of the facts set out in the said application are attacked by the affidavit of a credible person; when thus attacked, the issue thus formed shall be tried by the judge, and the application either granted or refused."

Rule 258 by its terms is mandatorily operative. It provides the only means by which issue can be joined. The affidavit of a credible person attacking the application for a change of venue in the respects specified in Rule 258 is prerequisite to the invocation of the discretionary powers of a trial judge to determine if the applicant can obtain a fair and impartial trial; if the affidavit is not filed, the trial judge is required to remove the cause pursuant to Rule 258 or, if applicable, Rule 260. Bennett v. Jackson, Tex.Civ.App., 172 S.W.2d 395, wr. ref. w. o. m.; Taylor v. Batte, Tex.Civ.App., 145 S.W.2d 1116, no writ hist. The fundamental principle involved was stated in Freeman v. Ortiz, Tex.Civ. App., 136 S.W. 113, affirmed 106 Tex. 1, 153 S.W. 304:

"The purpose of a change of venue is that the parties to a suit may obtain

a fair and impartial trial, for a judgment obtained without such a trial is a travesty upon justice and, if upheld, a disgrace to the law."

Rule 258 presupposes, and we think properly, that a change of venue is necessary in the interests of justice if the application therefor stands unchallenged in the manner prescribed.

■ The trial judge was therefore under the duty of removing the cases pursuant to Petitioner's application for change of venue and this cause must be reversed and remanded for this purpose, and for other reasons now to be discussed.

We preface our discussion of Petitioner's pleas of limitation with the following explanatory comments. In resolving Petitioner's point of error urging that Respondents' suits were barred by the two-year statute of limitations, we are required to review the holding of the Court of Civil Appeals in City of Abilene v. Bailey, 345 S.W.2d 540, in which we refused the application for writ of error with the notation "no reversible error." This is notwithstanding that here, as in Bailey, under the factual situations involved, the basic question of the essential elements of a cause of action to support a recovery for a taking or damaging of private property for a public use under Article I, Section 17 of the Constitution, Vernon's Ann.St., was not properly preserved for review by this Court. This is recognized by Petitioner in its supplemental brief filed herein, in which it is stated that Petitioner's point of error presenting this problem was not carried forward in its motion for rehearing in the Court of Civil Appeals in Bailey, and was dropped in the instant case because of our refusal of the application for writ of error in Bailey. Also, as will be later developed, our holdings with respect to Petitioner's plea of limitation require, in turn, consideration of Petitioner's point of error attacking the form of the issues submitted by the court to determine the question of damages.

## PETITIONER'S PLEAS OF LIMITATION

The original petition of Respondent Downs was filed on June 17, 1960, and the petitions of Respondents Powers and Shotwell were filed October 20, 1960. Citations were issued in the cases on October 25, 1960.

Respondents alleged in their first amended petition that the sewage disposal plant of Petitioner began operation on or about June 30, 1958, and that on or about November 6, 1959, the operations reached full capacity; that at this time, and afterwards, "the obnoxious fumes and obnoxious odors which spread across and invaded the property and buildings became so offensive as to make their premises unfit for continuous habitation; that such odors from and after the date hereinabove set out being generated on and originating from the sewage disposal plant of the defendant have become so offensive and collect on the property of these plaintiffs that their property has been diminished in value and damaged as hereinafter set out in violation of Section 17, Article One of the Constitution of Texas." Respondents also alleged that "the incidence of mosquitoes and flies has multiplied so that the land and premises of these plaintiffs is no longer a desirable place to live or economically sound for use as a stock farm and that these plaintiffs' property has been diminished in value." It is thus seen that the purport of the allegations of Respondents was that the operations of the plant constituted a nuisance on or about November 6, 1959, when the operations of the plant reached full capacity, entitling Respondents to damages under Section 17 of Article I of our Constitution which provides that "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made * * *."

Petitioner in its answer alleged by way of affirmative defense that Respondents' causes of action were barred by the two-

year statute of limitation "in that the permanent damage claimed to plaintiffs' land, if any, occurred when the defendant constructed and placed its sewage disposal plant in operation on or about July, 1958 * * * and further * * * the permanent damage claimed by Plaintiff to his land occurred when such damage became apparent because of the construction and operation of defendant's said plant." The purport of Petitioner's defensive plea of limitation was that the conditions creating the nuisance and the right to damages, if such existed, arose when the plant was first placed in operation in July, 1958, rather than, as alleged by Respondents, when the plant reached full operations on or about November 6, 1959.

The Water and Sewer Superintendent for Petitioner testified that the sewage disposal plant processed 3,554,000 gallons upon commencement of operations on July 10, 1958; that the flow on July 17, 1959, was 5,698,000 gallons; that the average daily flow in 1960 was 6,500,000 gallons, and that on or about November 6, 1959, the last flow to the old sewer farm was taken off and transferred to the new sewage disposal plant.

The trial court submitted the liability issue in terms of the plant causing objectionable matter, such as noxious fumes, odors or insects to come upon the farms of Respondents; the damage issue in terms of whether the objectionable matter caused depreciation in the market value of Respondents' farms and whether such damage was permanent; the issues to determine the amount of damages in terms of the reasonable cash market value of the farms immediately prior and immediately after the beginning and completion of the depreciation in value; and the limitation issue in terms of when Respondents had knowledge that their lands were damaged.

The Court of Civil Appeals upheld the manner of submission of the liability issue and stated that the City is liable under the Constitution for diminution in market value of land resulting from noxious odors and insects cast thereon regardless of the question of negligence or of nuisance. The Court further stated upon authority of City of Abilene v. Bailey, Tex.Civ.App., 345 S.W.2d 540, wr. ref. n. r. e., that the finding that the operation of Petitioner's sewage disposal plant caused noxious fumes, odors and insects to come upon the lands of Respondents amounted to a finding that the operation of the sewage disposal plant created a nuisance.

Arguing from an understandable misinterpretation of the basis of our refusal of the application for writ of error in the Bailey case, Petitioner contends that Respondents suffered a legal injury, and hence their causes of action arose "the moment the odors and insects invaded their premises," which, under the evidence, continues Petitioner, was immediately after the sewer farm was placed in operation on July 10, 1958. Further reasoning therefrom, Petitioner contends that the rule applied by this Court in Tennessee Gas Transmission Co. v. Fromme, 153 Tex. 352, 269 S.W.2d 336, and similar cases, is controlling here, i. e., that where the facility is of a permanent character and the invasion is continuous and recurring, the statute of limitations begins to run at the time of the first invasion.

The Court of Civil Appeals held that "[u]ntil the condition did become readily discernible or apparent there was actually no injury" to the lands of Respondents and that the "evidence does not conclusively show that the invasion of appellees' lands from odors and insects commenced in July of 1958 and certainly does not conclusively show that such invasion commenced within their knowledge at that time." Upon this reasoning the Court of Civil Appeals upheld the submission of the limitation issue by the trial court in terms of when Respondents "had knowledge that their land was damaged * * * as the result of obnoxious odors"; the jury answered July, 1959, which was within the limitation period.

■ The resolution of the foregoing rests in the fact that the invading agents resulting from the operations of the sewage disposal plant do not affect the physical condition or cause damage to the land itself—as was the case of flowing water in Fromme—but are the cause of, and result in, personal discomfort and annoyance to those who reside on the land. The damages consequent therefrom are recoverable as a taking or damaging of private property for a public use under Article I, Section 17, of the Constitution only if, and after, the operations of the sewer farm constitute a nuisance.

The basic rule was early stated by this Court in Baugh v. Texas & N. O. R. Co., 80 Tex. 56, 15 S.W. 587:

> "When a nuisance is created by the construction of works in their nature permanent, and which, as sometimes occurs in case of works for a public use, are not subject to be abated, the rule is that all damages resulting therefrom to property may be recovered in one action, and the proper measure of damages is the depreciation in the value of the property. Rosenthal v. [Taylor, B. & H.] Railway Co., (Tex.) ante, [79 Tex. 325, 15 S.W.] 268, (decided at the present term;) [Gainesville, H. & W.] Railway Co. v. Hall, 78 Tex. 169, 14 S.W.Rep. 259 [9 L.R.A. 298]."

It was further held by this Court in Sherman Gas & Electric Co. v. Belden, 103 Tex. 59, 123 S.W. 119, 27 L.R.A.,N.S., 237:

> "To justify a recovery of damages for personal inconvenience or reduction in the value of their property, the plaintiffs must prove such annoyance, discomfort, or other interruption of the use of their home as would constitute a nuisance. The standard by which the issue of nuisance must be determined by the jury is that the conditions caused by the operation of the plant were such as would disturb and annoy persons of ordinary sensibilities, and of ordinary tastes and habits. In other words, the acts complained of must constitute a nuisance. W. P. O. Co. v. Cook, 6 Tex. Civ.App. 573, 26 S.W. 96; League v. Journeay, 25 Tex. 172, Dittman v. Repp., 50 Md. 513, 33 Am.Rep. 325; 21 Am. & Eng. Ency. 687.

> "If there be no nuisance, there can be no recovery of damages for such annoyance as may exist, nor for diminution in the value of the property."

The rule in Belden was reaffirmed by this Court in Brewster v. City of Forney (Tex. Comm.App.), 223 S.W. 175. The case involved a suit for damages against a municipality resulting from the operation of a sewage disposal system. The jury found that the operations caused offensive odors to such an extent as to make the property of the plaintiff undesirable as a home, and resulted in a diminution in the fair market value of the property of $10.00 per acre. The trial court also submitted the question of whether the plant as operated was a nuisance, to which the jury answered in the negative. In connection with the latter issue the court defined a nuisance as "the use of one's own property for the conducting of one's own business in such an unreasonable manner as will, under all the circumstances, unfairly cause real or material damages to another." The trial court entered judgment for the municipality upon the basis of the jury finding that the operation of the system did not constitute a nuisance, and this was affirmed by the Court of Civil Appeals. Brewster v. City of Forney, Tex.Civ.App., 196 S.W. 636. The Court of Civil Appeals reasoned that the jury finding negativing a nuisance rendered the case one of damages without the existence of a nuisance, "which was damnum absque injuria."

The Commission of Appeals was of the opinion "that the facts found by the jury showed beyond doubt or question that the construction and operation of the plant

complained of was, as related to plaintiff, [constituted] a 'nuisance,'" and that these findings rendered the additional finding of the jury negativing nuisance "wholly immaterial." The Commission of Appeals did not regard as controlling the holding in Belden that the issue of nuisance must be determined by the standard of whether or not the operations of the sewage disposal system were such as would disturb and annoy persons of ordinary sensibilities, and of ordinary tastes and habits. It is also clear that this Court disagreed with the Commission of Appeals upon the crucial question of what is essential to the establishment of a nuisance to support a recovery founded on a taking or damaging of private property for a public use under Section 17 of Article I of the Constitution. This is apparent from the view of this Court quoted by the Commission of Appeals in its opinion, and by the order of this Court remanding the case "for further trial in accordance with the rules announced in Sherman Gas & Electric Co. v. Belden, 103 Tex. 59, 123 S.W. 119, 27 L.R.A. (N.S.) 237"; Brewster v. City of Forney (Tex.Comm. App.), 223 S.W. 175.

The rationale of the decisions is that a municipality is not guilty of an actionable tort in the fact that its act of constructing and operating a sewage disposal plant results in what would be a private nuisance if operated as a private enterprise; but if the construction and operation of the plant results in a nuisance, such acts of the municipality constitute a damaging or taking of property under Section 17 of Article I of the Texas Constitution. Without the requirement that the facts supporting a recovery under the Constitution as a taking or damaging of private property for public use must be such as would support a recovery for a nuisance, the municipality would be held to a higher liability than a private person engaging in the same acts.

This is not to say, of course, that the facts must necessarily be characterized in pleadings or findings as a nuisance, but it does mean that the conditions and circumstances shown by the evidence, and the findings, must establish a nuisance. This is our construction of the opinion in City of Temple v. Mitchell, Tex.Civ.App., 180 S.W.2d 959, no wr. hist., cited by the Court of Civil Appeals in City of Abilene v. Bailey, supra. The statement in Houston & T. C. R. Co. v. Davis, 45 Tex.Civ.App. 212, 100 S.W. 1013, er. ref., also cited by the Court in Bailey, to the effect that there may be a recovery "for property taken and damaged for a public purpose regardless of any question of negligence or nuisance" is not in harmony with the decisions if considered as a holding that there can be a taking or damaging of property regardless of whether or not the nature of the public use would constitute a nuisance. The decision of this Court in Gainesville, H. & W. R. Co. v. Hall, 78 Tex. 169, 14 S.W. 259, 9 L.R.A. 298, which was cited in the Davis case as authority for the foregoing statement, approached the problem by saying that the Legislature certainly did not intend to authorize "a corporation to do an act for a public use which, if done by an individual without legislative sanction, would be actionable, and at the same time exempt it from liability to respondent in damages to the owner whose property has been injured." From this the Court proceeded to hold that the noise, smoke and vibration of the trains which depreciated the lands involved in the case would have been a nuisance at common law if the business of operating the trains had been carried on by a private person, and upon this basis the court held that the affected lands had been taken and damaged in the constitutional sense.

Article 5526, Vernon's Ann.Tex.Stats., imposes a limitation period of within two years after the cause of action shall have accrued regarding actions in trespass for injury done to the estate or property of another. It was said by this Court in Port Arthur Rice Milling Co. v. Beaumont Rice Mills, 105 Tex. 514, 143 S.W. 926, that "Before it can be said that a cause of action

exists in a legal sense, there must be such a mature right as may be declared upon and maintained"; the Court further quoted with approval the statement that "The statute of limitation begins to run from the time when a complete cause of action accrued—that is, when a suit may be maintained—and not until that time." It was held in Stanley v. Schwalby, 85 Tex. 348, 19 S.W. 264, that "Limitation runs upon the right or cause of action accruing, and not before; and this does not exist unless facts exist which authorize the person asserting claim to ask relief from some court of justice against the person who ought to make reparation."

■ Respondents did not have a cause of action against Petitioner until there was a legal injury for which Petitioner was liable. See City of Ottumwa v. Nicholson, 161 Iowa 473, 143 N.W. 439, L.R.A.1916E, 983. Liability arose against Petitioner when, and not until, the operations of its sewage disposal system were such as to constitute a nuisance and this is determinable by the standard of when the facts and circumstances were "such as would disturb and annoy persons of ordinary sensibilities, and of ordinary tastes and habits." Sherman Gas & Electric Co. v. Belden, supra. See also City of Temple v. Mitchell, supra, holding that the invasion of property rights must be substantial to constitute a nuisance, the standard for determining substantiality being that of normal persons in the particular locality.

■■ The burden was upon Petitioner to establish its defensive plea of limitation. City of Houston v. Chapman, 132 Tex. 443, 123 S.W.2d 652. Essential to its defense was a finding establishing the time when the cause of action accrued to Respondents, i. e., when operations of the sewage facilities were such as to constitute a nuisance under the standard to be applied. An issue for such purpose was not requested by Petitioner nor did Petitioner object to the *limitation* issue submitted by the trial court for the reason that it did not embrace the proper standard. Petitioner excepted to the form of the *liability* issues submitted by the trial court which inquired if "the sewage disposal operation in question has caused objectionable matter, if any, such as noxious fumes, odors or insects, if any, to come upon" Plaintiffs' farms, upon the ground that "the Plaintiffs have failed in this case to show that the Defendant did any act which was performed in a negligent manner or such as to constitute a nuisance which was a proximate cause of Plaintiffs' alleged injuries"; also, Petitioner's fifth point of error to the Court of Civil Appeals asserted that "the trial court erred in failing to submit an issue to the jury inquiring as to whether the acts of Appellant were such as to constitute a continuing and permanent nuisance for the reason that such a finding is an essential element of Appellees' cause of action." However, Petitioner did not preserve the foregoing point of error in its motion for rehearing in the Court of Civil Appeals and did not bring such a point of error to this Court in its application for writ of error.

## THE DAMAGE ISSUES

The principles controlling our conclusions concerning the liability and limitation issues bear a close relationship to the damage issues. As before mentioned, the damage issues were phrased in terms of whether the fumes, odors or insects "have caused depreciation in the market value of" Respondents' farms and, if so, what were the reasonable cash market values of Respondents' farms "immediately prior to the beginning of such depreciation in the value" and "immediately after the completion of the depreciation in value." Petitioner properly objected to these issues, and has preserved its objections by points of error before the Court of Civil Appeals and here, upon the grounds that there is neither a time specified fixing the time of injury or depreciation, nor any standard to be applied, all of which permitted the jury to fix the amount of depreciation at any time after the injury occurred up to the time of trial.

Depreciation in the value of the property is the proper measure of damages in cases where a permanent nuisance has been created by the construction of works for a public use. Baugh v. Texas & N. O. R. Co., supra. Under the general rule this is determined by the difference in the reasonable market value of the property immediately before and immediately after the injury. City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.2d 57; Trinity & S. Ry. Co. v. Schofield, 72 Tex. 499, 10 S.W. 575; Town of Merkel v. Patterson, Tex.Civ. App., 56 S.W.2d 941, er. ref. We have held earlier that in this case the injury to Respondents occurred, and the right of action for the damages accrued, when the operations of Petitioner's sewage disposal plant reached the proportions of a nuisance. It is evident, however, that under the facts here, the operations of the sewage disposal plant could have caused depreciation in the reasonable market value of Respondents' farms before Respondents suffered a legal injury, i. e., before the operations were such as to constitute a nuisance, dependent, of course, upon the evidence and the jury findings. As a result, the measurement of the consequential damages to Respondents by the test of the reasonable market value of their farms immediately before the operations constituted a nuisance would not permit an allowance for the depreciation which might have occurred by reason of the construction of the plant and its operations prior to the time their effect was such as to constitute a nuisance under the test of offensiveness to a person of ordinary sensibilities.

The question, then, is whether Respondents are entitled to consideration by the jury of depreciation in the reasonable market value of their farms resulting from the operations of the plant before their causes of action arose, and the period of limitation commenced, if it is shown by the evidence, and found by the jury, that a nuisance arose subsequent to the commencement of operations. If such is the case, the jury might well further conclude that the operations of the plant before it became a nuisance caused insects and odors to come upon Respondents' farms to such an extent as to diminish their market value, although the invasions during this period of time were not of such proportions as to constitute a nuisance. In turn, Respondents would be denied recovery in this respect if the damage issues are limited to consideration of the reasonable cash market value of the farms at the time the operations of the plant became such as to constitute a nuisance.

It is our view that the entire depreciation caused by the operations of the sewage disposal plant, if held to constitute a nuisance at a later date, is to be included in properly measuring the damages to which Respondents are entitled. This is, in fact, the depreciation in the reasonable cash market value of the property resulting from that which became a nuisance. We therefore hold that upon the further trial of this case, and in event of findings that the nuisance arose at a later date, the jury should be required to determine the reasonable cash market value of Respondents' farms immediately after the nuisance arose, and what the reasonable cash market value of Respondents' farms would have been at that time if the farms had not been invaded by odors and insects caused by the operation of the sewage disposal plant.

The judgments of the courts below are reversed and the cause is remanded to the district court with instructions to remove the cause pursuant to Petitioner's application for a change of venue, and in accordance with Rule 259, Texas Rules of Civil Procedure.

NORVELL, J., dissenting.

NORVELL, Justice (dissenting).

I am in thorough agreement with the holdings of the Court upon the matters discussed in its opinion with the single exception of that relating to the change of venue

ordered by the Court. On this one point, I am in agreement with the Court of Civil Appeals.