Opinion issued May 12, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00351-CV

———————————

Lloyd Gillium and Carolyn Gillium, Martha hollan, robert villarreal
and kelly villarreal, chris rosson and stacy rosson, charlie beard and karen
beard, beverly o’brien, jim knapp, michael sanders and raquel sanders, richard
lon and priscilla lon, d.h. johnson and w.e. johnson, jermone a. bradke and
nancy bradke, robert hass, barbara mcguire, joshua d. bradley, mr. and mrs. e.e.
ewing, jr., willie mae leggett, anna l. hobbs, kenny bear and diana bear, nancy
holland, delana weller and kelly wilborn, regina brueggerman and steven
brueggeman, kit williams and cheryl williams lawrence t. southhall, iii and
cynthia y. southhall, daniel m. white, and robert white, Appellants

V.

Santa Fe
Independent School District, Appellee



 



 

On Appeal from the 405th District Court 

Galveston County, Texas



Trial Court Case No. 10-CV-0489

 



 

MEMORANDUM OPINION

          In
this case, we consider whether a public school district has governmental
immunity for various claims brought by residents of a subdivision in which the
school district is planning to build a student agricultural center.  We affirm in part and reverse and remand in
part.

BACKGROUND

          Santa Fe School District
[“the District”] is a public school district located in Santa Fe, Texas.  In 2008, the District began planning to
construct a state-of-the- art agricultural center [“the Center”] to be used by
its students.  Certain aspects of the
planned center were included within a November 2008 bond proposal approved by
voters, which provided for “the construction and acquisition of certain
equipment for a new agricultural center.” 
However, rather than use bond money to purchase property for the Center near
the local high school, the District decided to build on property it already
owned in the F.H. Thamn’s Second Subdivision [“the subdivision”], thus
eliminating the cost of purchasing other land.

Appellants, residents of the
subdivision, filed suit against the District seeking to enjoin the construction
of the Center in the subdivision. 
Specifically, appellants alleged that the District’s actions breached
the subdivision’s restrictive covenants, constituted a nuisance, and were a
taking in violation of the Private Real Property Rights Preservation Act.  See
Tex.
Gov’t Code Ann. §
2007.004(a) (Vernon 2008). Appellants also filed claims that the District
had violated the Texas Open Meetings Act. 
See Tex. Gov’t Code Ann. § 551.001. 
The District filed a plea to the jurisdiction, which the trial court
granted.  On appeal, appellants contend
the trial court erred in dismissing their claims for want of jurisdiction.  

STANDARD OF REVIEW

Governmental immunity consists of immunity from liability
and immunity from suit. Tooke v. City of Mexia, 197 S.W.3d 325, 332
(Tex. 2006). Governmental immunity deprives the trial court of subject-matter
jurisdiction in cases where instrumentalities of the state have been sued,
absent waiver of immunity by the state. Tex. Dep’t of Parks & Wildlife
v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004). A plea to the jurisdiction is
a proper instrument to raise the issue of governmental immunity. Id. at
225–26. Whether a court has subject-matter jurisdiction is a question of law,
and we review the trial court’s grant of a plea to the jurisdiction de novo. Id.
at 226. When reviewing a grant or denial of a plea to the jurisdiction, we
consider the plaintiff’s pleadings, construed in favor of the plaintiff, and
any evidence relevant to jurisdiction without weighing the merits of the claim.
Cnty. of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002). In a challenge solely to the
pleadings, as here, we decide if the plaintiff has alleged sufficient
jurisdictional facts to show the trial court’s subject-matter jurisdiction,
using a liberal construction in favor of the plaintiff. Miranda, 133
S.W.3d at 226. To affirmatively demonstrate the trial court’s jurisdiction, the
plaintiff must allege a valid waiver of immunity, which may be either a
reference to a statute or to evidence of express legislative permission. Tex.
Dep’t of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999); see Dallas
Area Rapid Transit v. Whitley, 104 S.W.3d 540, 542 (Tex. 2003) (plaintiff
must allege valid waiver of sovereign immunity to establish jurisdiction).

GOVERNMENTAL IMMUNITY

In four issues on appeal, appellants contend that the trial
court erred in granting the District’s plea to the jurisdiction. The trial
court granted the District’s plea after considering the pleadings and arguments
of the parties only, without the introduction of jurisdictional evidence. We
review the trial court’s determination de novo. Miranda, 133 S.W.3d at
226.  Because appellants had the burden to invoke the jurisdiction of the court by showing in
their pleadings that governmental immunity
is waived, we look to their first amended petition, construing it liberally and
looking to their intent. Id. We will address each of appellants’ causes
of action in turn.

 

 

Breach
of Contract

          In issue one, appellants contend the
trial court erred in dismissing their claims that the District’s actions
violated the subdivision’s restrictive covenants.[1]  Appellant’s argument that governmental
immunity has been waived for this claim is threefold.  

          First, appellants contend that the
“sue and be sued” language in section 11.151(a) of the Texas Education Code
waives immunity for their claim.  Section
11.151(a) provides as follows:

The trustees of an independent school district constitute a
body corporate and in the name of the district may acquire and hold real and
personal property, sue and be sued, and receive bequests and donations or other
moneys or funds coming legally into their hands.

 

Tex. Educ. Code Ann. § 11.151(a) (Vernon 2002). 
However, the Supreme Court has held that “section 11.151(a) [of the
Texas Education Code] is not a clear and unambiguous waiver of immunity.”  Lamesa
Indep. Sch. Dist. v. Booe, 235 S.W.3d 710, 711 (Tex. 2007) (citing Satterfield & Pontikes Const. Inc. v.
Irving Indep. Sch. Dist., 197 S.W.3d 390, 391 (Tex. 2006) and Tooke, 197 S.W.3d at 342)).

            Second, appellants contend that the
restrictive covenant is a contract and that section 271.152 of the Texas Local
Government Code waives the District’s immunity from suit on appellants’
contract claim.  Section 271.152 provides
as follows:

A local governmental entity that is
authorized by statute or the constitution to enter into a contract and that
enters into a contract subject to this subchapter waives sovereign immunity to
suit for the purpose of adjudicating a claim for breach of the contract,
subject to the terms and conditions of this subchapter.

 

Tex. Loc. Gov’t Code Ann. § 271.152 (Vernon 2006).  Section 271.152 waives immunity from
suit regarding a claim for breach of contract against a “local governmental
entity” authorized by statute or the constitution to enter into a contract. See
id. A “local government entity” is a political subdivision of the State,
including a public school district. See id. § 271.151(3). Accordingly,
under section 271.152, political subdivisions that enter into contracts “subject
to this subchapter waive[] sovereign immunity to suit for
the purpose of adjudicating a claim for breach of the contract.” Id. §
271.152; see also Tooke, 197 S.W.3d at 344–45. However, contracts
subject to the waiver include only “written contract[s] stating the essential
terms of the agreement for providing goods or services to the local
governmental entity that [are] properly executed on behalf of the local
government entity.” Id. §271.151(2).  The restrictive covenant that forms the basis
of appellants’ breach of contract claim is not a contract “for providing goods
or services,” thus the limited waiver of immunity found in section 271.152 is
not applicable.

          In Creekstone
Cmty. Assn., Inc. v. Houston Housing Auth., No. 01-09-00984-CV, 2010 WL
5117697, at * 1 (Tex. App.—Houston [1st Dist.] Dec. 16, 2010, no pet.) (mem.
op.), a homeowner’s association filed suit against a local government entity
alleging that the local governmental entity had violated certain restrictive
covenants.  Id.  The homeowner’s
association argued that section 271.152 of the Local Government Code waived
sovereign immunity because their claim regarding the breach of the restrictive
covenant was a breach of contract claim. 
Id. at *4.  This Court held that restrictive covenants
did not qualify “as a written contract related to the provision of goods and
services.” Thus, the limited waiver of immunity found in section 271.152 did
not apply.  Id. at *5.

          Third, appellants argue that because
the school district’s board of trustees did not vote on the proposed use or
location of the Center, its actions are not authorized, and, as a result, it is
not immune.  See Thomas v. Beaumont Heritage Soc’y, 296 S.W.3d 350, 354 (Tex.
App.—Beaumont 2009, no pet.) (holding temporary injunction to stop demolition
of school proper because, even though statute authorizes trustees to dispose of
school property, record showed that board of trustees had not voted to demolish
school).  However, the pleadings of both
parties are undisputed on one issue—the trustees voted on November 16, 2009  “to approve the PBK Architects design and
development of the Agriculture facility.” 
Thus, the trustees voted to authorize construction of the Center.

Because neither section 11.151(a) of the Texas Education
Code nor section 271.152 of the Texas Local Government Code waives the
District’s immunity, the trial court did not err in dismissing appellants’
breach of contract claim for want of jurisdiction.

          Accordingly, we overrule appellants’
first issue.

Takings

          In issue three, appellants contend the trial court erred in
dismissing their takings claims. 
Appellants claim both a statutory taking under section 2007.021 of the
Government Code and a Constitutional taking.

          Statutory Taking

The
Private
Real Property Rights
Preservation Act (“PRPRPA”) defines
a government taking, as follows:

(A) a governmental action that affects private real
property, in whole or in part or temporarily or permanently, in a manner that
requires the governmental entity to compensate the private real property owner
as provided by the Fifth and Fourteenth Amendments to the United States
Constitution or Section 17 or 19, Article I, Texas Constitution; or

 

(B) a governmental action
that:

 

(i) affects an owner’s private real property that is the
subject of the governmental action, in whole or in part or temporarily or
permanently, in a manner that restricts or limits the owner’s right to the
property that would otherwise exist in the absence of the governmental action;
and

 

                   (ii) is the producing cause
of a reduction of at least 25 percent in the market value of the affected
private real property, determined by comparing the market value of the property
as if the governmental action is not in effect and the market value of the
property determined as if the governmental action is in effect.


Tex. Gov’t Code Ann. §
2007.002(5) (Vernon 2009). The Act applies only to the following governmental
actions:

(1) the adoption or issuance of an ordinance, rule,
regulatory requirement, resolution, policy, guideline, or similar measure;

 

(2) an action that imposes a physical invasion or requires a
dedication or exaction of private real property;

 

(3) an action by a municipality that has effect in the
extraterritorial jurisdiction of the municipality, excluding annexation, and
that enacts or enforces an ordinance, rule, regulation, or plan that does not
impose identical requirements or restrictions in the entire extraterritorial
jurisdiction of the municipality; and

 

(4) enforcement of a governmental action listed in
Subdivisions (1) through (3), whether the enforcement of the governmental
action is accomplished through the use of permitting, citations, orders,
judicial or quasi-judicial proceedings, or other similar means.


Tex.
Gov’t Code Ann. § 2007.003(a)
(Vernon 2000).

 

          The PRPRPA waives immunity to suit and
liability “to the extent of liability created by [the Act].”  Tex.
Gov’t Code Ann. § 2007.004.  Thus,
the PRPRPA waives immunity for “governmental actions” alleged to have caused
(1) a Constitutional taking, or (2) of a reduction of at least 25 percent in
the market value of the affected private real property.

          The District argues that section 2007.004
does not waive liability on appellants’ takings claim because the trustees’
vote approving the construction of the Center is not a “governmental action” as
described by § 2007.003(a).  Without
citing any authority, the District claims that “the District did not engage in
regulatory or policy making actions that affected Appellants’ property in any
manner, and no action of the District has resulted in a physical invasion or
deprivation of Appellants’ property rights.”

          However, appellants’ petition alleges
a deprivation “of Plaintiffs’ vested property rights by denying Plaintiff all
economically beneficial or productive use of land, and by unreasonably
interfering with their rights to use and enjoy their property.”   Appellants also claim “damage to their
specific interest, the reduction in value of their property due to the
proximity to an agricultural facility (pests and parasites, odors, insecticides
and chemicals), and reduction in value based on the loss of the benefits of
their contract (deed restrictions and covenants).”  Thus, the petition alleges a Constitutional
taking and a reduction in the market value of the appellants’ property.  We see no reason, and the District has cited
no authority, compelling the conclusion that the trustees’ vote approving the
construction of the Center is not “the adoption or issuance of an ordinance,
rule, regulatory requirement, resolution, policy, guideline, or similar measure,” i.e., a
governmental action, giving rise to a claim under the PRPRPA.  Thus, we conclude that appellants’ petition
alleges a claim under the PRPRPA for which immunity is waived.

          Constitutional Taking

A governmental entity may be held liable for a nuisance that
rises to the level of a Constitutional taking. See Jennings, 142 S.W.3d at 316; see also City of
Abilene v. Downs, 367 S.W.2d 153, 159 (Tex. 1963) (“[I]f the
construction and operation of the plant results in a nuisance, such acts of the
municipality constitute a damaging or taking of property under Section 17 of
Article I of the Texas Constitution.”). 
The Fifth Amendment grants a landowner the right to seek compensation
from the government for land that it takes: “[N]or shall private property be
taken for public use, without just compensation.” U.S. Const. amend. V. Likewise, the Texas Constitution
provides, “No person’s property shall be taken, damaged, or destroyed for or
applied to public use without adequate compensation being made, unless by the
consent of such person.” Tex. Const.
art. I, § 17. Thus, while sovereign immunity protects the State from lawsuits
for monetary damages, it “offers no shield against a taking claim brought under
Article I, section 17 of the Texas Constitution.”  John G. & Marie Stella Kenedy Mem’l Found. v. Mauro, 921
S.W.2d 278, 282 (Tex. App.—Corpus Christi 1995, writ denied); see also Gen.
Servs. Comm’n v. Little-Tex Insulation Co., 39 S.W.3d 591, 598 (Tex. 2001)
(sovereign immunity does not shield State from action for compensation under
takings clause). Rather, “[t]he Constitution itself is . . . a waiver of
governmental immunity for the taking, damaging or destruction of property for
public use.” Steele v. City of Houston, 603 S.W.2d 786, 791 (Tex. 1980).

To prove a Constitutional taking, a plaintiff must show that
(1) the governmental entity knew that a specific act was causing identifiable
harm, or (2) that the specific property damage alleged is substantially certain
to result from an authorized government action—that is, that the damage is
necessarily an incident to, or necessarily a consequential result of the
government’s action.  Jennings, 142 S.W.3d at 314.

The District does not contend that appellants’ have not
sufficiently pleaded a constitutional taking; instead, the District argued both
in the trial court and on appeal that neither taking claim, even if properly pleaded,
is ripe.[2]

Ripeness

Ripeness is an element of subject matter jurisdiction. Mayhew
v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998), cert. denied,
526 U.S. 1144, 119 S. Ct. 2018, 143 L.Ed.2d 1030 (1999).  A case is not ripe when its resolution depends
upon contingent or hypothetical facts or upon events that have not yet come to
pass.  Waco Indep. Sch. Dist. v.
Gibson, 22 S.W.3d 849, 852 (Tex. 2000).  Ripeness, like other justiciability doctrines,
derives in part from the constitutional prohibition against advisory opinions,
which in turn stems from separation-of-powers principles. Patterson v.
Planned Parenthood of Houston & Se. Tex., Inc., 971 S.W.2d 439, 442
(Tex. 1998).

In addition to restraining courts from
issuing unconstitutional advisory opinions, ripeness also has a pragmatic,
prudential aspect that aims to conserve judicial time and resources for real
and current controversies, rather than abstract, hypothetical, or remote
disputes. Id. at 443; Mayhew, 964 S.W.2d at 928. These factual
and prudential concerns underlie the court’s determination of ripeness, in
which it considers (1) the fitness of the issues for judicial decision and (2)
the hardship occasioned to a party by the court’s denying judicial review. Perry
v. Del Rio, 66 S.W.3d 239, 250 (Tex. 2001).

The District argues that “appellants’ nuisance [and takings]
claims are premised upon the speculative belief that once completed and
occupied, the operations of the Center might constitute a nuisance. The
Center is still under still under construction and no animals are housed at the
Center—the opportunity for Appellants’ anticipated nuisance does not yet
exist.”

In Scarbrough v. Metro.Transit
Auth. of Harris Cnty., 326 S.W.3d 324, 337 (Tex. App.—Houston [1st Dist.]
2010, pet. denied), the plaintiff, a home and business owner with property near
a proposed Metro line, sued Metro alleging concern over the disruption and
dangers that would accompany the proposed construction of the Metro line near
her home and business.  Id. Metro filed a plea to the
jurisdiction, alleging among other things, that the plaintiffs’ takings claim
was not ripe.  Id. at 330.  This Court noted
that, at the time the trial court ruled on Metro’s plea to the jurisdiction,
there was no evidence that the construction would occur on the plaintiff’s
property or that she would be denied access to or restricted in the use of her
property.  Id. at 337.  This Court then
held that “the likelihood of injury to [the plaintiff] depended on factors too
speculative to address at the time of the trial court’s ruling,” thus,
appellant’s takings claim was “not ripe for decision.”  Id.
at 338.

The same is true in this case.  At the time the trial court granted the
District’s plea to the jurisdiction, the Center had not been completed and no
animals were yet housed at the Center. 
Plaintiffs’ allegations that the Center “will bring pests and parasites
to the area” as well as dangerous pesticides were, at the time the trial court
granted the plea to the jurisdiction, mere speculation as to what might occur
if the Center were to be completed.  As
such, the plaintiffs’ takings claims were “too speculative to address at the
time of the trial court’s ruling.”  Id. 

Because a trial court has no subject-matter jurisdiction to
address claims that are not ripe, the trial court did not err by dismissing
appellants’ takings claims.

We overrule issue three.

Nuisance

In issue two, appellants contend the trial court erred in
dismissing their claims that the District’s actions created a nuisance.  The District again argues that “appellants’
nuisance [and takings] claims are premised upon the speculative belief that
once completed and occupied, the operations of the Center might constitute a
nuisance.

For the same reason that appellants’ takings claims are not
ripe, their nuisance claims are also not ripe. 
Because the trial court lacked subject-matter jurisdiction to address
claims that are not ripe, the trial court did not err by dismissing appellants’
nuisance claims.

We overrule issue two.

Open
Meetings

In issue four, appellants contend the trial court erred by
dismissing their claims that the District violated the Texas Open Meetings Act
[“TOMA”]. See Tex. Gov’t Code Ann. § 551.001-551.146 (Vernon 2004 &
Supp. 2010).  TOMA expressly waives
sovereign immunity for violations of the Act. See Tex. Gov’t Code Ann.
§ 551.142.  TOMA requires that all
meetings of governmental bodies be open to the public unless otherwise
authorized by law.  Id. at   § 551.002.   The purpose of TOMA is “to safeguard the
public’s interest in knowing the workings of its governmental bodies.”  Hays County
v. Water Planning P’ship, 69 S.W.3d 253, 257–58 (Tex. App.—Austin 2002, no pet.).     

The appellants’ live petition alleges that the District
violated “[TOMA] and its own procedures by planning and decision-making
[regarding the location of the Center] behind closed doors.”  Appellants’ petition also alleges that the
District “has taken no action to vote on critical aspects of actions it is
taking with tax money, including the placement and location of the facility in
question.  The District responds that
“because there was no TOMA violation, the District’s immunity from suit was not
waived by the TOMA and the District Court’s dismissal of Appellants’ TOMA
claims was not in error.”

However, the District’s argument goes to the merits of
appellants’ TOMA claim, not to whether the petition alleges a claim for which
immunity is waived.  See Hays County, 69 S.W.3d at 259 (“Determining whether an action
was taken in violation of [TOMA] is a question to be decided at a trial on the
merits.”). 

Because appellants’ petition alleged a TOMA violation, and
immunity is waived for such claims, the trial court erred by dismissing them
for want of jurisdiction.  Whether there
has actually been a TOMA violation is properly resolved by a trial court’s
action on the merits of the claim.

We sustain issue four.

 

CONCLUSION

We affirm the trial court’s judgment as it relates to the
dismissal of appellants’ breach of contract, nuisance, and takings claims.  However, we reverse the trial court’s
judgment as it relates to appellants’ TOMA claims and remand those claims for
further proceedings.


 

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Alcala and Bland. 

 











[1]
          Specifically, appellants claim
that the Center violates a restrictive covenant that provides that “no animals,
livestock, or poultry of any kind shall be raised, bred, or kept on any track
or portion of said land, if they are kept, bred, or maintained for any
commercial purpose.”





[2]
          Indeed, the District concedes
that “to the extent that Plaintiffs’ takings claims mature and are no longer
based on alleged contingent future events, [the trial court] can then hear
those claims because Section 2007.004 of the Texas Government Code (Private
Real Property Rights Preservation Act) clearly and unambiguously waives the
District’s immunity for claims brought pursuant to Chapter 2007 of the Code. Tex. Gov’t Code § 2007.004(a); see
also Tex. Const. art. I, §
17.  Plaintiffs’ takings claims, when and
if they do mature, do not present grounds for granting injunctive relief to
halt construction of the Center.”